[No. A084322. First Dist., Div. Three. June 30, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR RAY JENNINGS, Defendant and Appellant.

[No. A087469. First Dist., Div. Three. June 30, 2000.]

In re ARTHUR RAY JENNINGS on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

1304

## COUNSEL

Robert J. Graham, under appointment by the Court of Appeal for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

McGUINESS, P. J.—This appeal and petition for writ of habeas corpus arise from a series of incidents in which appellant Arthur Ray Jennings committed acts of domestic violence against victim Katherine T.[1] A jury convicted appellant of felony assault and aggravated assault by means of force likely to produce great bodily injury, as well as the two misdemeanors of dissuading a victim by force or threat and making threatening telephone calls.

On his direct appeal, appellant contends we must reverse his conviction because of (1) the alleged unconstitutionality of Evidence Code section 1109, pursuant to which the trial court admitted three prior incidents of domestic violence by appellant against the victim; (2) the trial court's failure to give a limiting instruction on the prior domestic violence evidence; and (3) alleged ineffective assistance of counsel in his trial attorney's failure to request such a limiting instruction. On his writ petition for collateral relief, appellant asks this court to issue a writ of habeas corpus vacating the judgment of conviction on the grounds (4) he received ineffective assistance of counsel because of his trial attorney's failure to subpoena a police officer to testify at trial regarding an alleged jailhouse conversation with appellant; and (5) he was deprived of a fair hearing on his motion for a new trial because of the failure of the officer to appear at the hearing and alleged misstatements by the prosecutor about the absence of any evidence the jailhouse conversation took place. None of these contentions have merit. We therefore affirm the judgment and deny the writ petition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and victim Katherine T. met in July 1996, and thereafter commenced an intimate relationship. They lived together until May 1997,

---

[1] At appellant's request, on July 9, 1999, this court consolidated the petition for writ of habeas corpus and the appeal for purposes of briefing, oral argument and opinion. For purposes of simplicity and clarity, we will refer to appellant and petitioner Jennings as appellant throughout this opinion.

after which T. moved with her daughter to a different address in Fairfield. Although appellant and T. were no longer living together in October 1997, appellant had a copy of the key to T.'s new apartment.

On October 29, 1997, appellant admitted himself to T.'s apartment. He came into T.'s bedroom, swore at her, and yelled at her to get her "ass up off the bed." Appellant was angry at T. about contacts she had recently had with Charles W., the father of T.'s daughter. Appellant ordered T. to telephone W. Appellant had an argument with W. over the telephone and then broke T.'s telephone. Afterwards, T. told appellant she was not happy and wanted to end their relationship. Appellant slapped T. hard, causing her head to hit the wall. Appellant then threw T. on the floor, pinned her down and choked her with his left arm, and used his closed right fist to punch her twice on the forehead and once behind her ear. Appellant then kicked or "stomped" on T. several times on her right side.

After beating T., appellant got some ice from the kitchen and told her to put it on her forehead. She did this for five or ten minutes. Appellant took away the ice and told T. to remove her clothing and get in bed. Appellant then straddled her with his knees on her shoulders, rubbed his penis on T.'s face, and asked her to orally copulate him. T. refused. Appellant placed his penis in T.'s vagina, copulated her, and then masturbated on T.'s stomach. Afterwards, T. put her clothes back on and started to cry. Appellant became angry with T. again, and once more started choking and hitting her. He warned her that if she reported him to the police and he went to jail, ". . . when I get out, I'm going to kill you and your daughter." Appellant left T.'s apartment around 3:15 p.m. After T.'s daughter came home from school, T. put the couch up to the door and reported the incident to her apartment manager.

Danise Werner, the resident manager of T.'s apartment, met with T. between 4:00 and 5:00 p.m. on October 29, 1997. T. appeared "real nervous" and "shaky," and "couldn't really speak very well." Werner observed "a big lump" in the center of T.'s forehead. T. told Werner that she needed to replace the locks on her front door, and then started crying. T. told Werner that her boyfriend had "somehow made a key" and had come into her apartment and assaulted her that morning. The lock on T.'s front door was changed the next day.

Appellant returned to T.'s apartment uninvited between 11:15 and 11:45 p.m. on November 5, 1997. Werner saw him pounding on T.'s door and window. She told appellant to leave the property. After appellant left the premises, he telephoned T. repeatedly through the night, telling her to open

her door and let him in. Among other things, appellant told T. he would never allow her to leave him, and "the relationship was not going to be over until he say[s] it's over." About two hours after appellant left the premises and thirty minutes after his last telephone call to T., a large rock was hurled through T.'s front window. At this point, Werner told T. to call the police.

The next day, T. went to a women's crisis center for a restraining order and gave a statement to Officer Ross Hawkins of the Fairfield Police Department. The victim was "[c]rying, scared [and] withdrawn." Officer Hawkins noticed a "[v]ery obvious" and "significant" injury on her face, like a "knot" or "large bump right in the middle of her forehead," "about the size of . . . a half a dollar." That afternoon, Officer Hawkins went to appellant's residence and arrested him. Appellant telephoned the victim four times from jail. She did not answer the calls, but appellant left messages on her answering machine. Around 4:30 p.m., Officer Hawkins responded to a call from T. and went to her apartment, where she played him the telephone answering machine messages from appellant. Among other things, appellant said "Why are you doing this to me? I'll see you when I get out," and "Paybacks are a bitch." Officer Hawkins took possession of the telephone answering machine message tape, which was subsequently played for the jury at trial.

The victim was permitted to testify on direct examination at trial to three prior incidents of domestic violence involving appellant. On September 21, 1996, she had asked appellant "to pack his stuff and leave" her residence after he had yelled at her daughter and pushed her against a wall. In response, appellant hit T. three or four times and then kicked in her apartment door. The victim reported this incident to the police. On February 3, 1997, appellant slapped T. in a jealous rage. Later, a rock broke T.'s bedroom window, and she saw appellant's car leaving the driveway immediately afterwards. Finally, on May 24, 1997, appellant urged T. to change her story and drop the domestic violence charge pending against him from the earlier incidents. When T. said there was nothing she could to about it because the district attorney had already initiated the case, appellant straddled her in bed, stuck his finger in her eye, hit her on the leg, and choked her.

Appellant testified at trial in his own defense. He acknowledged being arrested in May 1997 for an incident of domestic violence against T., but denied ever hitting her. Appellant claimed he pled no contest to the charge and served time in jail only because he was having problems with his attorney at the time. Appellant also denied assaulting T. or visiting her apartment on October 29, 1997. According to appellant, he was at home that

morning around breakfast time with Velma Paz, his elderly landlady. He left around 9:40 a.m. and spent the rest of the day in Oakland and Vacaville with two other friends, Chauncy Banks and Linda Moore. Although Paz corroborated part of appellant's story, on cross-examination she acknowledged that she did not make breakfast that morning because she was late for a class, she had actually left her house well before the time appellant claimed to have been there, and she had not been accurate in some of her other statements about the time she had allegedly seen appellant that morning. Moore acknowledged that she was a "good friend" of appellant; they were "like family," and frequently helped each other out. Moore testified that "[i]f he needed me, . . . I'm there for him."

In rebuttal, Charles W. testified he received a collect telephone call from T. around 7:30 a.m. on the last Wednesday in October 1997. Almost immediately, appellant got on the telephone in a rage, demanding to know why W. was "calling their house," and threatening to "beat" W.'s "ass."

Appellant was charged with assault with intent to commit oral copulation, aggravated assault with force likely to produce great bodily injury, an attempt by force or threat of force to dissuade a witness from reporting a crime, and making threatening telephone calls. (Pen. Code, §§ 220, 245, subd. (a)(1), 136.1, subd. (c)(1), 653m, subd. (d).) Appellant pled not guilty to all charges. On the People's motion, the trial court permitted the admission of evidence of prior acts of domestic violence pursuant to Evidence Code sections 1109 and 1101, subdivision (b).[2] The jury found appellant guilty of assault (Pen. Code, § 240), a lesser included offense of the first count of assault with intent to commit forcible oral copulation, and convicted him on all three remaining counts as charged.

Appellant filed a motion for a new trial on the ground of newly discovered evidence with respect to an alleged jailhouse conversation between appellant and Officer William White in which, according to appellant, Officer White purportedly stated he had not observed any injury on the victim when he saw her sometime in late October or early November. The trial court denied the new trial motion, finding appellant had failed to produce any substantial evidence in support of his motion which could not have been discovered prior to trial. The trial court then sentenced appellant to state prison for the midterm of three years on the conviction for aggravated assault and a concurrent three-year midterm on the conviction for dissuading a witness. The trial court stayed punishment as to the two other counts. This appeal timely followed. Ten months later, appellant filed his petition for writ of habeas corpus, raising issues in connection with the trial court's denial of his

---

[2]Unless otherwise indicated, all further statutory references are to the Evidence Code.

new trial motion and his trial counsel's failure to subpoena Officer White for testimony at trial.

## II. CONSTITUTIONALITY OF SECTION 1109

 Appellant's principal contention on appeal is that section 1109 is unconstitutional on its face and as applied, because it authorizes the admission of evidence of prior acts of domestic violence solely to prove a propensity to commit the crime charged, and substantially increases the risk of an erroneous conviction.[3] On this basis, appellant argues he was denied both due process and equal protection of the law by the trial court's application of section 1109 to admit the three prior incidents of domestic abuse against T. in the trial on the subject offenses. Appellant's contentions are without merit, and have been mooted by recent decisions of the California Supreme Court and the Courts of Appeal upholding section 1109 and a companion statute against the same kinds of constitutional attack appellant has made.

---

[3]Section 1109 provides as follows: "(a) Except as provided in subdivision (e), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

"(b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, in compliance with the provisions of Section 1054.7 of the Penal Code.

"(c) This section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute or case law.

"(d) As used in this section, 'domestic violence' has the meaning set forth in Section 13700 of the Penal Code.

"(e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."

Section 1101 provides: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Prior to trial, the prosecution moved in limine to admit evidence of the three prior incidents between appellant and T. under section 1109. The trial court ruled the evidence admissible under both sections 1109 and 352. At the outset of trial, the court reiterated its prior ruling that the prior incidents were admissible under section 1109. Appellant did not raise his present constitutional challenges to section 1109.

For purposes of discussion, we will assume that, despite his failure to raise these constitutional contentions below, appellant has not waived these issues and we may consider them on appeal. With regard to appellant's argument that section 1109 runs afoul of the due process provisions of the federal and state constitutions, this contention has already been rejected by the courts. In *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), our Supreme Court addressed the constitutionality of section 1108, a parallel statute which addresses prior "sexual offenses" rather than prior "domestic violence," and upheld that provision against due process challenge. (*Falsetta, supra,* 21 Cal.4th at pp. 907-908, 910-922.) Although the Supreme Court has not addressed the constitutionality of section 1109, at least three recent post-*Falsetta* cases from the Courts of Appeal have subsequently upheld the constitutionality of section 1109 against similar due process challenges. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1331-1334 [92 Cal.Rptr.2d 433] (*Brown*); *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1025-1030 [92 Cal.Rptr.2d 208] (*Hoover*); *People v. Johnson* (2000) 77 Cal.App.4th 410, 416-420 [91 Cal.Rptr.2d 596] (*Johnson*).) We agree with the reasoning and the results in these cases, and adopt their analyses as our own. In short, the constitutionality of section 1109 under the due process clauses of the federal and state constitutions has now been settled.

Nevertheless, as appellant correctly notes in supplemental briefing, the question of whether section 1109 runs afoul of the equal protection clauses of the United States and California Constitutions has apparently not yet been addressed by the courts. In this case, appellant asserts that by treating those accused of offenses involving domestic violence differently from those accused of other criminal acts, section 1109 violates his right to equal protection of the laws. Furthermore, he argues that section 1109 is subject to a strict scrutiny analysis because it expands the scope of admissible evidence that may be used to secure a conviction, thereby allegedly infringing upon his constitutionally protected rights to a fair trial, due process, and proof of guilt beyond a reasonable doubt, as well as his fundamental interest in personal liberty. Thus, he maintains section 1109 may only be upheld if the disparate treatment of those accused of domestic violence is justified by a compelling state interest. He claims that there is no such state interest.

■ In *People v. Fitch* (1997) 55 Cal.App.4th 172, 184-185 [63 Cal.Rptr.2d 753] (*Fitch*), the Court of Appeal upheld section 1108, the

parallel statute permitting admission of prior sex offense evidence, against just such an equal protection challenge. The *Fitch* court first held that section 1108 does not infringe upon the cited constitutional rights to due process, fair trial, and conviction only upon proof beyond a reasonable doubt. The court then affirmed that an equal protection challenge to a criminal statute which, like section 1108, creates two classifications of accused or convicted defendants without implicating such a constitutional right, is subject to a rational-basis analysis. (*Fitch, supra,* at p. 184, citing *Estelle v. Dorrough* (1975) 420 U.S. 534, 537-538 [95 S.Ct. 1173, 1175-1176, 43 L.Ed.2d 377].) The *Fitch* court concluded that section 1108 easily withstood "this relaxed scrutiny." "The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant's commission of other sex offenses. This reasoning provides a rational basis for the law. . . . In order to adopt a constitutionally sound statute, the Legislature need not extend it to all cases to which it might apply. The Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others. (*People* v. *Silva* (1994) 27 Cal.App.4th 1160, 1170-1171 [33 Cal.Rptr.2d 181].)" (*Fitch, supra,* 55 Cal.App.4th at pp. 184-185.)

■ In our opinion, this analysis applies with equal force to the admission of evidence of a defendant's commission of other acts of domestic violence under section 1109. On its face, section 1109 treats all defendants charged with domestic violence equally; the only distinction it makes is between such domestic violence defendants and defendants accused of other crimes. Neither the federal nor the state constitution bars a legislature from distinguishing among criminal offenses in establishing rules for the admission of evidence; nor does equal protection require that acts or things which are different in fact be treated in law as though they were the same. The equal protection clause simply requires that, "in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" (*Estelle v. Dorrough, supra,* 420 U.S. at pp. 538-539 [95 S.Ct. at p. 1176].) Absolute equality is not required; the Constitution permits lines to be drawn. (*Douglas v. California* (1963) 372 U.S. 353, 357 [83 S.Ct. 814, 816, 9 L.Ed.2d 811].) The distinction drawn by section 1109 between domestic violence offenses and all other offenses is clearly relevant to the evidentiary purposes for which this distinction is made.

Appellant fails to show that domestic violence defendants are "similarly situated" with respect to all other criminal defendants. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].) Nevertheless, even if

we assume domestic violence defendants are "similarly situated" to defendants in all other criminal cases and equal protection analysis is therefore applicable here, we reject appellant's assertion that strict scrutiny analysis is the appropriate standard of review. For the same reasons discussed at length in *Falsetta* and *Fitch* with respect to section 1108, and reiterated in the cited appellate cases upholding section 1109 against due process challenges, the subject provision does not infringe a defendant's right to due process, a fair trial, or conviction by proof beyond a reasonable doubt. (*Falsetta, supra,* 21 Cal.4th at pp. 910-922; *Brown, supra,* 77 Cal.App.4th at pp. 1331-1334; *Hoover, supra,* 77 Cal.App.4th at pp. 1025-1030; *Johnson, supra,* 77 Cal.App.4th at pp. 416-420.) Because section 1109 does not implicate these constitutional rights, the statute will satisfy constitutional equal protection requirements if it simply bears a rational relationship to a legitimate state purpose. (*Fitch, supra,* 55 Cal.App.4th at p. 184; *People v. MacKenzie* (1995) 34 Cal.App.4th 1256, 1269 [40 Cal.Rptr.2d 793].)[4]

Nor is the connection between the evidentiary purpose of section 1109 and appellant's liberty interests sufficiently direct to trigger the strict scrutiny standard of review. Appellant's reliance on *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] is misplaced. That case concerned a penal statute under which juveniles could be incarcerated for a lengthier period of time than the maximum jail term imposed on adults convicted of the same offense. Such a statute implicates a juvenile offender's fundamental liberty interest by directly imposing additional restraints on their personal liberty, to which similarly situated adult offenders are not subject. (*Id.* at pp. 240-245.) *Olivas* does not deal with the admissibility of evidence at trial, and does not suggest that an evidentiary statute such as section 1109 implicates liberty interests or is subject to strict scrutiny. Although statutes allowing additional evidence to be admitted at trial against particular kinds of criminal defendants may make prosecution easier in such cases, this fact does not render such statutes direct restraints on the defendants' personal liberty. To require strict scrutiny analysis in this case would as a practical matter deny the Legislature the power to admit propensity evidence in *any* case unless it was admissible in *all cases.* Equal protection

[4]We note that although it did not directly address the equal protection issue with respect to section 1108, immediately after citing *Fitch* favorably in support of its own due process analysis the Supreme Court in *Falsetta* appeared to indicate its agreement with the *Fitch* court's equal protection holding, as follows: "*Fitch* likewise rejected the defendant's equal protection challenge, concluding that the Legislature reasonably could create an exception to the propensity rule for sex offenses, because of their serious nature, and because they are usually committed secretly and result in trials that are largely credibility contests. (*Fitch, supra,* 55 Cal.App.4th at p. 184.) As *Fitch* stated, 'The Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others. [Citation.]' (*Id.* at pp. 184-185; . . . .)" (*Falsetta, supra,* 21 Cal.4th at p. 918, citations omitted.)

does not require the state to choose between attacking every aspect of a problem or not attacking the problem at all, and does not prohibit the Legislature from regulating certain classes of cases in which the need is deemed most evident. (*People v. Edwards* (1991) 235 Cal.App.3d 1700, 1709 [1 Cal.Rptr.2d 631].)

Appellant contends that, even if it is subject to the less rigorous rational basis test, section 1109 still does not meet the qualifying criteria identified by the *Fitch* court in the case of section 1108; namely, (a) the inherent seriousness of the offenses, and (b) the credibility contests that frequently accompany such charges. (*Fitch, supra,* 55 Cal.App.4th at p. 184.) Appellant urges that domestic assaults "are no more serious than many other offenses, such as mayhem and arson, for which there is no relaxed standard for admitting evidence of prior criminal acts"; and "[c]redibility contests are hardly unique to domestic violence or sexual offense cases," but "occur whenever an act is witnessed by only two persons, the victim and the perpetrator—that is, in any 'one-on-one' case." For these reasons, appellant insists, "neither of the 'rational basis' justifications offered in *Fitch* amounts to a rational basis—let alone a 'compelling State interest'—for a relaxed evidentiary standard for acts of domestic violence only."

Appellant is wrong. Like the sex crimes examined by the court in *Fitch*, domestic violence is quintessentially a secretive offense, shrouded in private shame, embarrassment and ambivalence on the part of the victim, as well as intimacy with and intimidation by the perpetrator. The special relationship between victim and perpetrator in both domestic violence and sexual abuse cases, with their unusually private and intimate context, easily distinguishes these offenses from the broad variety of criminal conduct in general. Although all criminal trials are credibility contests to some extent, this is unusually—even inevitably—so in domestic and sexual abuse cases, specifically with respect to the issue of victim credibility. The Legislature could rationally distinguish between these two kinds of cases and all other criminal offenses in permitting the admissibility of previous like offenses in order to assist in more realistically adjudging the unavoidable credibility contest between accuser and accused. The facts that other crimes such as murder and mayhem may be more serious and that credibility contests are not confined to domestic violence cases do not demonstrate the absence of the required rational basis for the Legislature's distinction between these crimes.

### III. No Abuse of Discretion Under Section 352

Section 1109 conditions the introduction of prior domestic violence evidence on an evaluation under section 352 of whether the evidence is more

probative than prejudicial. A careful weighing of prejudice against probative value under that section is essential to protect a defendant's due process right to a fundamentally fair trial. (*Johnson, supra,* 77 Cal.App.4th at p. 419; *Hoover, supra,* 77 Cal.App.4th at pp. 1028-1029; cf. *Falsetta, supra,* 21 Cal.4th at pp. 916-919.)

In supplementary briefing, appellant contends the trial court erred in this case by failing to address all the factors it was purportedly required to weigh in determining whether to admit the prior incidents of domestic violence under section 352. Specifically, appellant cites *Falsetta* to assert that in engaging in the section 352 weighing process, the trial court was required to address certain *specific factors* regarding each prior offense, including the nature, relevance and possible remoteness of each such offense; the degree of certainty of its commission; the likelihood of confusing, misleading or distracting the jurors from their main inquiry; the similarity of each prior offense to the charged offense; its likely prejudicial impact on the jurors; the burden on the defendant of defending against the uncharged offense; and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all prior offenses, or excluding "irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at pp. 916-917.) Complaining that the trial court in this case did not address each of these specific "factors," appellant insists he was thereby deprived of due process of law.

We disagree with appellant. Under section 352, a trial court may in its discretion exclude material evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create a substantial danger of undue prejudice, confusion of the issues, or misleading the jury. The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules. (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716]; *People v. Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].) ██ We will not overturn or disturb a trial court's exercise of its discretion under section 352 in the absence of manifest abuse, upon a finding that its decision was palpably arbitrary, capricious and patently absurd. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125 [36 Cal.Rptr.2d 235, 885 P.2d 1]; *People v. Robbins* (1988) 45 Cal.3d 867, 880-881 [248 Cal.Rptr. 172, 755 P.2d 355]; *People v. Adams* (1980) 101 Cal.App.3d 791, 799 [162 Cal.Rptr. 72]; *People v. Cordova* (1979) 97 Cal.App.3d 665, 670 [158 Cal.Rptr. 852].) "The [trial] court's exercise of discretion under Evidence Code section 352 will not be disturbed on appeal unless the court clearly abused its discretion, e.g., when the prejudicial effect of the evidence clearly

outweighed its probative value." (*People v. Brown* (1993) 17 Cal.App.4th 1389, 1396 [22 Cal.Rptr.2d 14].)

■ Thus, as the Supreme Court has repeatedly and recently reaffirmed, "when ruling on a section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state that it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under . . . section 352." (*People v. Williams* (1997) 16 Cal.4th 153, 213 [66 Cal.Rptr.2d 123, 940 P.2d 710], citing *People v. Lucas* (1995) 12 Cal.4th 415, 448-449 [48 Cal.Rptr.2d 525, 907 P.2d 373].) Nothing in *Falsetta* indicates the Supreme Court intended either to reverse this well-established precedent on the proper standards for section 352 analysis, or to require a trial court to articulate its consideration of each of a list of particular factors of probability and prejudice in making a decision under section 352. Because *Falsetta* did not review an actual section 352 ruling admitting propensity evidence in that case, much less the procedural issue of *how* a trial court should explicate such a ruling, it cannot be authority for overturning the long-standing rules for appellate review of section 352 analysis by a trial court.

Applying these rules, the trial court's analysis in this case was sufficient. The record shows the trial court articulated its reasons for admitting the evidence under section 352 as follows: "Okay. All right. Then, at this time, the Court is going to make a ruling pursuant to 1109 that the prior instances as alleged in the motion are admissible under 1109. Further, under Evidence Code Section 352, quite frankly, it doesn't seem all that prejudicial. It's certainly probative, but I don't find that it is uniquely intended to provoke an emotional bias against the defendant. And pursuant to 1109 and Evidence Code section 352, it should be admitted and the Court will so find."

The prior incidents of domestic abuse introduced in this case were no more egregious than the charged offense, and posed no danger of confusing the jury. Nor do we believe that any inclination to punish appellant for his prior offenses was a significant factor in this case. Appellant acknowledged being arrested and charged for these prior offenses, having a restraining order placed upon him, violating the restraining order, pleading no contest to these charges, and being jailed, even though he tried to explain his plea as being caused by problems with his lawyer and "against my will." This knowledge that appellant had already pleaded no contest and been punished for his prior transgressions substantially mitigates the kind of prejudice usually associated with the introduction of prior bad act evidence. (*Falsetta, supra,* 21 Cal.4th at p. 917.)

The trial court correctly deemed the prior domestic violence evidence to be highly probative, and not "uniquely intended to provoke an emotional

bias against" appellant. The similarity of the earlier events to the offense charged in this case was quite remarkable. The pattern of abuse was unmistakable, and the trial court properly permitted it to be presented and argued to the jury. We conclude the trial court in this case sufficiently articulated its reasons for admitting the subject evidence under section 352. Because we conclude the prior domestic violence evidence was generally admissible under section 1109, we need not consider appellant's alternative argument that it should have been excluded when offered for a specific purpose under section 1101.

### IV. FAILURE TO INSTRUCT ON PROPENSITY EVIDENCE

 Next, appellant contends the trial court erred in failing to give a limiting instruction with respect to the evidence admitted under section 1109. In colloquy with the prosecutor, the trial court in this case offered to review an instruction regarding the prior domestic violence offenses if one were proposed. No such instruction was ever offered or proposed by either the prosecution or the defense. Appellant now urges that the trial court's sua sponte failure to give a limiting instruction violated his right to due process because the jury was never instructed it could not convict him based upon a character trait or condition.

 In the absence of a request, a trial court generally has no sua sponte duty to give a limiting instruction. Under section 355, "[w]hen evidence is admissible . . . for one purpose and is inadmissible . . . for another purpose, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Italics added.) Under this provision, a court has no duty to give a sua sponte instruction limiting the purpose for which evidence may be considered. (*People v. Dennis* (1998) 17 Cal.4th 468, 533 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; *People v. Macias* (1997) 16 Cal.4th 739, 746, fn. 3 [66 Cal.Rptr.2d 659, 941 P.2d 838]; *People v. Collie* (1981) 30 Cal.3d 43, 63-64 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].) This principle has been held specifically to apply to limiting instructions regarding the admission of a defendant's previous uncharged misconduct. (*People v. Padilla* (1995) 11 Cal.4th 891, 950-951 [47 Cal.Rptr.2d 426, 906 P.2d 388], overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823 [72 Cal.Rptr.2d 656, 952 P.2d 673].) We conclude it applies as well to a limiting instruction on the use of evidence admitted under section 1109. (Cf. *Brown, supra,* 77 Cal.App.4th at pp. 1336-1337.)

Despite this general rule, appellant nevertheless asserts the trial court was required to give the kind of instruction given by the trial court in *Fitch*, informing the jury that the question it was to decide was whether the defendant committed the crime charged, and that he could be found guilty only if the jury was convinced beyond a reasonable doubt that he committed

the crime charged. (*Fitch, supra,* 55 Cal.App.4th at p. 182.) We disagree. Nowhere did the court in *Fitch* conclude that a particularized instruction of this nature is necessary to prevent the application of section 1109 from violating a defendant's constitutional rights. The instruction cited in *Fitch* is simply another limiting instruction of the kind which a trial court is required to give *only upon request.* (§ 355.) As long as the trial court instructs the jury that it may only convict the defendant of the charged crime after it has conscientiously weighed and considered *all* the evidence under the standard of proof beyond a reasonable doubt, a defendant is protected against conviction based on prior disposition evidence alone without a consideration of all the other evidence under the proper standard. Absent a legislatively mandated duty to give a cautionary instruction as to particular evidence, there is no sua sponte duty on the part of the trial court to amplify on the reasonable doubt instruction. (*People v. Stanley* (1995) 10 Cal.4th 764, 797, fn. 11 [42 Cal.Rptr.2d 543, 897 P.2d 481].) The trial court in this case gave the proper reasonable doubt instructions. No more was required of it.

In supplementary briefing, appellant contends *Falsetta* specifically requires the giving of a limiting instruction "along the lines of the 1999 revision to CALJIC No. 2.50.01." Appellant is wrong.[5] The actual holding of the Supreme Court in *Falsetta* was that the trial court in that case "properly declined" to give a special limiting instruction requested by the defendant, and that "[i]n future cases, defendants *may request* an instruction based on revised CALJIC No. 2.50.01 (1999 rev.) . . . ." (*Falsetta, supra,* 21 Cal.4th at p. 922, italics added.) The Supreme Court went on to hold that the trial court "erred in failing to tailor defendant's proposed instruction to give the jury some guidance regarding the use of the other crimes evidence, rather than denying the instruction outright." (*Id.* at p. 924.) The court based this holding on the statutory obligation of a court to give a limiting instruction *upon request,* under section 355. (*Falsetta, supra,* at p. 924.) Several recent cases, including one from this division, have concluded that the versions of both CALJIC Nos. 2.50.01 and 2.50.02 applicable at the time of the trial in this case were constitutionally infirm. (*People v. James* (2000) 81 Cal.App.4th 1343, 1357-1358 & fn. 8 [96 Cal.Rptr.2d 823]; *People v. Orellano* (2000) 79 Cal.App.4th 179, 186 [93 Cal.Rptr.2d 866]; *People v. Vichroy* (1999) 76 Cal.App.4th 92, 99-101 [90 Cal.Rptr.2d 105].)

In our opinion, *Falsetta* does not require a trial court to give revised CALJIC No. 2.50.02 under the circumstances presented in this case, in which no party *requested* that the instruction be given in the first place. As

---

[5]Among other errors in his argument, appellant incorrectly refers to CALJIC No. 2.50.01, the relevant instruction for prior *sexual* offenses. The applicable instruction in this case would be the 1999 revision to CALJIC No. 2.50.02, which essentially restates the same material found in CALJIC No. 2.50.01 and applies it to prior offenses involving domestic violence.

the *Falsetta* court noted, a trial court generally has no sua sponte duty to instruct the jury as to the admissibility or use of other crimes evidence. (*Falsetta, supra,* 21 Cal.4th at p. 924, citing *People v. Collie, supra,* 30 Cal.3d at pp. 63-64; see also *Brown, supra,* 77 Cal.App.4th at pp. 1336-1337.) The Supreme Court's opinion stands only for the well-established rule that a court is obliged to give a limiting instruction upon a proper request that it do so; and where a request for a faulty limiting instruction is made, the trial court should tailor the proposed instruction to the standard instructions. Because no request of any kind was made here, there was no error.

In the alternative, appellant claims his trial counsel rendered ineffective assistance in failing to request a limiting instruction. ■ In order to prevail upon a claim of ineffective assistance of counsel, appellant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decision-making must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .' [Citation.] Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 333 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 2068, 80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 [233 Cal.Rptr. 404, 729 P.2d 839].)

■ An instruction like that given in *Fitch*, which appellant now urges should have been requested here, would have added virtually nothing to the reasonable doubt and other instructions actually given by the trial court aside from emphasizing to the jury the existence of the prior abuse evidence and its potential use as evidence of appellant's predisposition to commit the charged crimes. Thus, the instruction would have specifically pointed out to the jury that the evidence of appellant's prior acts of domestic abuse against the victim could be used as evidence that " '. . . he has a trait of character that predisposes him to commission of certain crimes, . . .' " and moreover that the jury could " '. . . use that evidence that [he] committed another offense for the limited purpose of deciding whether he has a particular character trait that tends to predispose him to the commission of *the charged offense*. . . .' " (*Fitch, supra,* 55 Cal.App.4th at p. 182, fn. 4, italics added.)

The same is true of the 1999 revision of CALJIC No. 2.50.02, which tells the jury that the evidence of prior domestic violence offenses could be relevant to an inference the defendant had a disposition to commit acts of domestic violence, and "was likely to commit and did commit the crime of which he is accused." (CALJIC No. 2.50.02 (1999 rev.).)

The record does not show why such an instruction was not requested here. Defense counsel could well have concluded it was not in appellant's interest to request an instruction like that given in *Fitch*, believing it would merely emphasize appellant's prior domestic abuse of the victim without adding anything of significance to the reasonable doubt instructions given by the trial court. Similarly with regard to the 1999 revision of CALJIC No. 2.50.02, defense counsel could reasonably have decided it was not in appellant's best interest to give an instruction emphasizing to the jury that it could infer from the evidence of appellant's prior domestic violence offenses that he had a disposition to commit such acts, and "was likely to commit and did commit the crime of which he is accused." (CALJIC No. 2.50.02 (1999 rev.).)

These circumstances also convince us there was no reasonable probability the jury would have returned a more favorable verdict had the subject instructions been given. Because the record is silent on counsel's reasoning and a satisfactory explanation exists for not making the request, appellant cannot establish either that his trial counsel's omission to request a limiting instruction in this case fell below a standard of reasonable competence, or that the omission was prejudicial under the standard applicable to an ineffective assistance of counsel claim. (*People v. Pope* (1979) 23 Cal.3d 412, 424-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People v. Bonilla* (1985) 168 Cal.App.3d 201, 206 [214 Cal.Rptr. 191].)

### V. PETITION FOR WRIT OF HABEAS CORPUS*

. . . . . . . . . . . . . . . . . . . . . . . .

### VI. DISPOSITION

The petition for writ of habeas corpus is denied. The judgment is affirmed.

Parrilli, J., and Walker, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 18, 2000.

---

*See footnote, *ante*, page 1301.