Filed 1/29/14  P. v. Duenas CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C071883 |
| Plaintiff and Respondent, | (Super. Ct. No. SF109960A) |
| v. | |
| GERARDO DUENAS, | |
| Defendant and Appellant. | |

A jury found defendant Gerardo Duenas guilty of corporal injury upon a child and felony child abuse of his three-year-old daughter, B.  In a trial to the court, defendant was found to have two prior strike convictions.  Defendant was sentenced to concurrent terms of 25 years to life on each count.[1]

---

[1]  Defendant was subsequently resentenced pursuant to Penal Code section 1170.126 to a term of 14 years eight months.

1

On appeal, defendant contends the trial court prejudicially erred by: (1) admitting evidence of two uncharged acts of domestic violence by him against his wife, I.; and (2) admitting expert testimony regarding victim abuse. We reject both contentions.

STATEMENT OF FACTS

Defendant married 16-year-old I. in 1999 and they divorced in 2009. During the marriage they had five children, one of whom was B., who was born in 2004.[2] According to I., defendant "hated" B. from the time of her birth. He struck her daily with a belt, pinched her, would not let their other children play with her, would leave her in a closet without food, and would make her face the wall when she displeased him.

*Charged Offenses*

In October 200,7 I. left home to go to a laundromat. At that time, B. was standing facing the wall in the living room. When I. returned home she found B. standing naked in a washroom tub, shaking and clinching her hands while defendant poured cold water over her. B.'s lower back and "rib area" were covered with bruises and red marks. I. asked defendant what he was doing and defendant said, " 'She just didn't want to eat her food.' "

On October 13, 2007, the day after I. gave birth to her youngest son, she returned home from the hospital and saw that B. had a "slash" or "gash" on her head. Fearful that defendant would kill B., I. packed B.'s clothes and medical records and took her to I.'s mother's home for safe keeping. I. then returned to her home, gathered the rest of her children and moved into a trailer with her father. When relatives of I. saw the bruises and welts on B. they reported the matter to the police.

On October 28, 2007, Officer Beverly Young conducted a welfare check on B. "head to toe." B. "had bruising pretty much from the top of her body to the bottom. She

---

[2]     In 2007, I. learned that defendant was not the father of her youngest child.

had bruising on her face, her chest, back, bottom, arms and legs. She had some bald patches on her head, and a cut on her head. She had a lump above her right eye, and some swelling below the eye, in the face. [¶] She had a very large bruise on the right side of her body on her rib cage that also had some abrasions around it. . . . Some of them scabbed and some of them just red."

*Uncharged Offenses*

On May 23, 2006, I. and defendant got into an argument regarding her cheating on him. Defendant began hitting her and she called the police, but may have hung up on them. Nevertheless, officers showed up at the residence and, over defendant's protestations, entered and questioned I. I. signed a police report prepared by one of the officers, but she never went to court because defendant threatened to leave the country and she would be without financial support.

In December 2006, I. and defendant again got into an argument about her cheating on him. The argument became physical when I. caused defendant's laptop to fall to the floor. Defendant began kicking and choking her. She tried to call her mother on the cell phone, but defendant took it from her and broke it. Officers arrived, but I. was uncooperative because defendant threatened to go to Mexico and not support her or the children if he got sent to jail.

*Expert Testimony On Domestic Abuse*

Melinda Shrock, a marriage and family therapist, testified regarding several means by which domestic male abusers gain control of household members and prevent them from reporting physical abuse. Specifically, the abusers may gain control by intimidation (looks, abuse of pets, displaying weapons); emotional abuse (name calling, putting the female down); isolation (controlling where the female goes and who she talks to); use of children (threatening to take the children away from her); economic abuse (controlling money); and threatening physical abuse or actually using physical abuse.

3

DISCUSSION

I

*Uncharged Acts Testimony*

Defendant contends the trial court prejudicially erred by admitting evidence of two uncharged acts of domestic violence committed by him against his wife.[3] The court did not err.

---

[3] Over defendant's objection, the trial court instructed the jury (pursuant to CALCRIM No. 852) regarding the jury's use of evidence of uncharged domestic violence by the defendant. As instructed, CALCRIM No. 852 provides: "The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically: Acts committed on May 23, 2006, and December 28, 2006.

"Domestic violence means abuse committed against an adult who is a spouse, or person with whom the defendant has had a child.

"Abuse means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit the charged offenses. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged offenses involving domestic violence. The People must still prove each charge beyond a reasonable doubt.

"Do not consider this evidence for any other purpose."

In prosecutions for child abuse under Penal Code sections 273d, subdivision (a) and 273a, subdivision (a), Evidence Code section 1109 makes admissible prior uncharged acts of domestic violence by the defendant to establish his or her propensity for committing such acts as long as the evidence is not inadmissible under Evidence Code section 352. (*People v. Dallas* (2008) 165 Cal.App.4th 940, 942-943, 951-957.) Evidence Code section 352 provides that: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Defendant argues that "admission of the uncharged acts . . . served merely to confuse the issues and mislead the jury." This is so, he claims, because "[t]he fact--if it was a fact--that he hit his wife one year earlier because he discovered she had cheated on him--does not logically tend to show that he committed the totally unrelated violent acts upon his daughter. A person who strikes another adult during an argument about infidelity does not harbor the same intent or motive [as] someone who strikes a three-year-old child. The prosecution presented no evidence that a wife-beater is also a childbeater." Defendant's argument is not persuasive.

It is a defendant's commission of prior acts of domestic violence that is particularly probative in demonstrating whether he or she has a propensity to commit such acts, including the one or ones charged, rather than a defendant's intent or motive for doing so. (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 705-706; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1318-1319.)

Further, any potential danger that the jury would confuse or misuse the evidence of the uncharged offenses was effectively eliminated by the trial court's instruction limiting the jury's use of that evidence. Specifically, the court instructed the jury: "If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or

5

inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit the charged offenses.  If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the charged offenses involving domestic violence. The People must still prove each charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose."

Consequently, we find no error by the trial court in admitting evidence of defendant's uncharged acts of domestic violence.

II

*Expert Testimony Regarding Victim Abuse*

Defendant contends the trial court prejudicially abused its discretion in admitting, over his objection, testimony by Melinda Shrock regarding intimate partner battering and the means used by male abusers to control their female victims.  Defendant argues that because Schrock "failed directly to offer expert testimony that an abused mother likely would fail to report the abuse of her daughter" the net effect of Schrock's testimony was "to simply assassinate the character of [defendant], and make it likely the jury would believe anything about him, including that he abused his child."  Again, we find no error in admitting the challenged testimony.

Evidence Code section 1107, subdivision (a) makes admissible in a criminal trial expert testimony regarding intimate partner battering and its effects on the victim, but makes such evidence inadmissible to prove the act or acts which form the basis for the criminal charge.  Subdivision (b) of section 1107 states that a foundation for admission of the expert testimony is sufficient if its proponent establishes its relevancy and the qualifications of the expert.

I. testified that immediately after she and defendant were married he severely limited her communication with her family because "[e]very body was a heathen to him"

6

and the family was trying "to destroy us."  When asked if she ever tried to intervene when defendant was hitting B. with a belt, I. explained that she tried to argue with defendant but he would get "physical" with her and she "couldn't defend [B.]."  I. also feared reporting defendant's physical abuse because he threatened to leave the country, go to Mexico, and she would have no one to support her.

Shrock's testimony was offered to show why I. stayed in the relationship with defendant and did not report his abuse to law enforcement.  In *People v. Kovacich* (2011) 201 Cal.App.4th 863, we determined that such expert testimony was relevant to explain why victims of domestic violence may stay in a relationship with their abusers.  (*Id.* at pp. 901-902.)  When Shrock was asked if there had been research on "misconceptions that still exist about domestic violence," she reported that there was a "myth" that if the abuse "[w]asn't reported [then] [i]ts probably not going on."  Since Shrock's testimony was relevant to show I.'s proffered reasons for not reporting the abuse and remaining with defendant was not uncommon among victims of domestic abuse, the court did not err in admitting Shrock's testimony.

### DISPOSITION

The judgment is affirmed.



      ROBIE      , Acting P. J.



We concur:



      BUTZ      , J.



      MAURO      , J.

7