Filed 11/24/20  P. v. Bowden CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>GINA BOWDEN,<br><br>      Defendant and Appellant. | A157132<br><br>(Contra Costa County<br>Super. Ct. No. 51803667) |

Gina Bowden was convicted following a jury trial of identity theft and forgery.  On appeal, she contends (1) neither conviction is supported by substantial evidence; (2) the trial court abused its discretion when it admitted evidence of a prior offense pursuant to Evidence Code sections 1101, subdivision (b) and 352; (3) the court erred when it failed to exclude the prior offense evidence on the ground of delayed disclosure; (4) the court abused its discretion when it refused to instruct the jury on the delayed disclosure; and (5) Senate Bill No. 136 requires that six prior prison term enhancement allegations the court found true be stricken.  We shall strike the prior prison term enhancement allegations and true findings, but shall otherwise affirm the judgment.

## PROCEDURAL BACKGROUND

On March 8, 2018, appellant was charged by information with four counts of felony theft of identifying information with a prior conviction (Pen.

Code, § 530.5, subd. (c)(2)—counts 1-4[1] and one count of misdemeanor forgery (§§ 473, subd. (b), 476—count 5). The information also alleged, as to counts 1 to 4, that appellant had served six prior prison terms pursuant to section 667.5, subdivision (b), and, as to all counts, that she was presumptively ineligible for probation pursuant to section 1203, subdivision (e)(4).

On February 25, 2019, during appellant's jury trial, the trial court granted appellant's motion for judgment of acquittal (§ 1118.1) as to one of the identity theft counts (count 4).

On February 26, 2019, the jury found appellant guilty of one of the identity theft counts (count 1) and the forgery count (count 5), but found her not guilty of the two remaining identity theft counts (counts 2 and 3).

On March 29, 2019, following a bifurcated court trial on appellant's prior convictions, the court found true the six prior prison term enhancement allegations.

Also on March 29, 2019, the court struck the probation ineligibility allegation for purposes of sentencing, and placed appellant on four years of formal probation.

On April 22, 2019, appellant filed a notice of appeal.

FACTUAL BACKGROUND

*Prosecution Case*

Minh Nguyen testified that he was the owner of a tax preparation business called MT Tax and Financial Consulting, located in Oakland. Sometime before 2017, there was a break-in at the business and a "safety box" containing financial documents was taken. The prosecutor showed

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Nguyen a check with his name and business address on the top left and the name "Minh M. Nguyen" on the signature line on the bottom right, but he testified that the signature was not his. Nor had he written any of the information that was on the check. Nguyen did not know the name Gina Bowden and did not recognize appellant. He never gave appellant permission to possess any of his financial documents or personal information.

Concord Police Officer Anthony Perry testified that around 1:30 a.m. on January 29, 2017, he performed a traffic stop on a car in Concord. Appellant was the driver and there were two passengers. After conducting an investigation of the vehicle and its occupants, Perry arrested appellant and searched the interior of the car. He found a purse in the backseat, which appellant said belonged to her. Inside the purse was a red wallet containing several credit cards, debit cards, a medical marijuana card, a Costco card, and an out of state driver's license, all with the names of people on them other than appellant. He also found a receipt in the red wallet that was dated November 30, 2016, and had appellant's name on it.

Perry also found several checks in the red wallet, including a check handwritten in the amount of $700 and payable to "Gina Bowden." The check was endorsed on the back by Gina Bowden. Printed on the check was the account holder's information, including the name Minh Nguyen, the business MT Tax and Financial Consulting, and the business's address in Oakland.[2] Another check was printed in the name of someone other than appellant, but was otherwise blank. Finally, Perry found 13 of what "looked

---

[2] On cross-examination, Perry testified that the date written on the check was November 14, 2016. Also printed on the check was the notation, "Check must post by 12-10-2016."

like poor quality printed apparently fraudulent checks, in the names of Pamela C[.] and Clarina M[.]"

Concord Police Officer Paul Miovas testified about a prior offense appellant committed in 2012. Around 11:33 p.m. on April 21, 2012, after a concerned citizen reported suspicions about a truck parked in a secluded area, Miovas went to the location to investigate. During a search of the truck, which was associated with appellant, he found a woman's wallet in the rear of the truck containing several California driver's licenses, all with the same photograph but with different names, dates of birth, license numbers, and addresses. Miovas identified appellant at trial as the person pictured on all of the driver's licenses. The licenses did not have the holographic seal on them and were peeling. He also found a debit card with appellant's name on it in the same wallet. In addition, Miovas found checks and credit cards with names and addresses that corresponded with the information on some of the fake driver's licenses. There were also several garage door openers and several cell phones in the truck. Appellant was ultimately arrested as a result of Miovas's investigation.

On cross-examination, Miovas testified that the name Catherine G. was on several of the items he found in the truck, including one of the driver's licenses, several debit cards, a checkbook, and a letter from Turbo Tax. There was also an envelope with the name Catherine G., a social security number, and an address handwritten on it.

### Defense Case

Appellant testified in her own defense. She acknowledged that she had previously been convicted of identity theft and related charges, both in the April 2012 incident with the truck and in an earlier 2011 case. In the 2012 incident, appellant had made the counterfeit driver's licenses that had her

photo on them with a program she had purchased from someone who worked at the Department of Motor Vehicles. She already had the identifying information for the people she impersonated when she made the driver's licenses. Appellant acknowledged that she had possessed the fake driver's licenses, checks, and credit cards for the purposes of opening fraudulent accounts and making fraudulent transactions, and that she had in fact used those documents to open fraudulent accounts and engage in fraudulent transactions. She also acknowledged taking mail in the name of Catherine G. from an address in Pleasant Hill. Appellant described her criminal record as "[e]xtensive." She was involved in criminal activity from 1995 to 2012. She had spent a lot of time in prison, but had not been in prison since her release in 2014, following the 2012 identity theft conviction.

Appellant further testified that in the present case, the red wallet found in her purse did not belong to her. It belonged to an acquaintance named Pamela C., who had been a passenger in appellant's car and had left the wallet in the car in late 2016. Regarding the check for $700 with her name on it, appellant did not write that check to herself, although she endorsed it on the back. Pamela C., who owed her money, wrote the information on the check and told appellant she just needed to endorse it. Pamela C. showed appellant, who was not wearing her glasses, where to endorse the check, and appellant did so. Pamela C. then changed her mind and said she was going to pay appellant in cash instead. Pamela C. took back the check and gave appellant $350, which was half of the money she owed. Appellant never received the other $350.

Appellant said she never looked closely at the $700 check, and had assumed it was from Pamela C. She never tried to cash the check and never saw it after the day Pamela C. took it back. Nor had she ever looked through

the red wallet or seen any of the other items inside of it. Between November 2016, when Pamela C. left the red wallet in appellant's car, and January 29, 2017 when appellant was arrested, appellant kept the red wallet in her purse, the glove compartment of her car, or the trunk of the car. Appellant had tried to get the wallet back to Pamela C. but could not reach her. The phone number appellant had for her was disconnected and she no longer lived where appellant had known her to live. Appellant thought that if she kept the wallet with her, when she ran into Pamela C., she could return it. Appellant never looked inside the red wallet for Pamela C.'s contact information because she thought she would see Pamela C. again soon since Pamela C. still owed her $350.

Regarding the receipt found in the red wallet with appellant's name on it, appellant testified that she thought she had put the receipt in her purse, but did not recall putting it in the red wallet. She believed she "must have stuffed it into her purse and inadvertently stuffed it into the wallet." She had been unable to find the receipt in her purse when she subsequently looked for it. Appellant's purse had contained her own wallet, various receipts, and other items, in addition to the red wallet. Before Officer Perry searched her purse, she told him that one of the wallets was hers and one belonged to someone else.

Appellant further testified that she had been arrested in February or March of 2016 for failing to report to her probation officer. Appellant had failed to report because her mother had passed away in April 2015, and appellant was grieving and had a lot to deal with regarding her mother's estate. In the days before her mother died, appellant told her mother that she would be okay and her mother did not have to worry about that. When she said this, appellant meant that she would stop committing crimes, which

6

her mother had always wanted her to do.  Appellant had kept that promise and had not committed any crimes since.  Specifically, in the present case, she had not forged any checks or bank information and did not possess any of the items found in her purse with the intent to defraud.  Those items were left in her car by someone else.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Appellant contends her convictions for identity theft and forgery are not supported by substantial evidence because the prosecution failed to provide sufficient evidence of an intent to defraud.

To be guilty of identity theft, the prosecution must prove that the defendant had the intent to defraud.  (See § 530.5, subd. (c)(2).)  The offense of forgery also requires an intent to defraud.  (See § 476.)

"In reviewing a criminal conviction challenged as lacking evidentiary support, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  An appellate court must accept logical inferences the jury might have drawn from the evidence, even if the court would have concluded otherwise. [Citation.]"  *(People v. Brady* (2010) 50 Cal.4th 547, 561.)

In her opening brief, both in her statement of facts and in her discussion of the substantial evidence issue, appellant has offered a one-sided view of the evidence, setting forth only the evidence presented at trial that supports her version of the case.  This is contrary to basic tenets of appellate review.  First, rule 8.204(a)(2)(C) of the California Rules of Court, requires an appellant's opening brief to "[p]rovide a summary of the significant facts . . . ."

7

Second, when arguing on appeal that the evidence is insufficient to support the verdict, an appellant must set forth all material evidence on the issue. (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282 [a defendant who sets forth only her own evidence on an issue waives any sufficiency of the evidence argument].)

Moreover, even assuming appellant has preserved the substantial evidence issue for review, we find it to be without merit. Appellant argues that the circumstantial evidence in this case "does not rise to the level of an inference of intent to defraud," citing only her self-serving testimony that she had endorsed the check for $700 without her glasses on, that Pamela C. had then taken the check back and paid half of the money she owed to appellant in cash, and that appellant had not looked inside the red wallet and therefore did not even know the check was there during the time she possessed it, as she waited for the opportunity to return the wallet to Pamela C. Appellant further states, as if it were incontrovertible fact, that there was no evidence that she was connected with the red wallet, dismissing evidence that a receipt with her name on it was found in the wallet, asserting that she "did not know the receipt was in the red wallet, and surmised that she must have 'inadvertently stuffed it into the wallet' when she put it in her purse."

Appellant's conclusion that "any inference of intent required speculation and conjecture" simply ignores the questionable nature of much of her testimony, as well as all of the credible evidence presented at trial that *did* support a finding of intent to defraud. In addition to the evidence of appellant's prior offense involving identity theft and fraud, the evidence included the red wallet, found in appellant's possession and containing, inter alia, a receipt with her name on it, from which the jury could reasonably infer that the wallet belonged to her. The wallet also contained a check belonging

8

to Nguyen, with the name and address of his business—which had been the victim of a prior burglary—printed on it. The check was made out to appellant in the amount of $700, and she had endorsed the check on the back. Nguyen testified that he did not know appellant and had not given her permission to possess any of his business's financial documents. Plainly, in view of the totality of the evidence, the jury reasonably rejected appellant's justifications and found that she possessed the check with the requisite intent to defraud. (See *People v. Brady*, *supra*, 50 Cal.4th at p. 561.)

## II. *Admission of the Prior Offense Evidence*

Appellant contends the trial court abused its discretion when it admitted evidence of her 2012 offense, pursuant to Evidence Code sections 1101, subdivision (b) and 352.

## A. *Trial Court Background*

Before trial, appellant filed a motion in limine requesting exclusion of all evidence related to her prior offenses.

During the hearing on the motion, the prosecutor told the court that he was seeking admission of, inter alia, evidence related to the 2012 offense, including evidence about the search of the truck and the items that were found inside, pursuant to Evidence Code section 1101, subdivision (b). Defense counsel objected to admission of that evidence, which had resulted in a 2014 conviction, arguing that the evidence was far more prejudicial than probative and that its admission would violate appellant's due process rights.

Defense counsel further argued that the 2012 offense and the present case were not similar enough for the prior offense evidence to be useful to the jury. Specifically, at the time of prior offense, unlike the present incident, there was an outstanding warrant against appellant and she was on parole. In addition, unlike in the present case, some 20 counterfeit driver's licenses

9

with appellant's photo on them had been found, as well as several checkbooks and tax documents. Police had also found a case full of cell phones and garage door openers in the truck, "indicating an intricate, sophisticated, complex scheme." Counsel believed that all of the items found in the truck in the 2012 incident showed that appellant was "fully assuming the identities of other people . . . in an attempt to open up different accounts with tax information," which was much more inflammatory than the present case in which only an expired check and other unusable documents were found, with no fake identification cards or evidence of an attempt to assume anyone's identity. In addition, counsel believed that the prior offense evidence would take up more time at trial than evidence from the current case would.

The prosecutor, while noting that some of the items found in the truck in 2012 were different from what was found in appellant's car in the present case, the 2012 evidence was relevant to appellant's "intent to defraud and shows that and tends to prove that . . . in this case." In addition, the prosecution intended to call only one witness to testify about the facts of the prior offense, which would not take up a significant amount of time. Finally, the prosecutor acknowledged that the prior offense evidence would be prejudicial to some degree, but argued that it would be far more probative of appellant's intent in the present case, which was an element the prosecution had to prove.

The court first observed that appellant's convictions dated back to 1995, with at least nine other criminal cases before a conviction in 2009. All of the cases were "theft or fraud related." The court acknowledged the prejudice of admitting evidence of the 2012 offense pursuant to Evidence Code section 1101, subdivision (b), but found that under Evidence Code section 352, "there is significant probative value in her knowledge and intent here." The court

10

explained: "the documents or the items that were found in the current case . . . , taken as a whole, indicate[] a practice of having financial instruments in other people's names that can be used for not a legitimate purpose. And I think to present to the jury that this is the very first time . . . that this has happened or maybe even the second time is misleading."

The trial court ultimately ruled on the admissibility of evidence related to the 2012 offense as follows: "I will not allow the tax documents, or the W-2s, the Turbo Tax documents, or the case full of cell phones and garage door openers. I think those are less probative and less use to a jury. But I think the fact that she was in possession of ten different IDs, all with her picture on it, checkbooks, and debit cards or credit cards . . . with other people's . . . information, names, et cetera, is extremely probative. And given that we are talking about potentially fraudulent financial instruments in the present case, I think that it outweighs the prejudicial value, so I will allow those."

During trial, just before Officer Miovas testified about the 2012 incident, defense counsel asked the court to partially reverse its ruling on the 2012 offense, to admit additional testimony about what was found in the truck, including the case of cell phones and garage door openers, and the tax documents. He explained that he and appellant had "discussed it, and we have decided that we actually want to elicit that testimony." The court granted counsel's request. Counsel also said he had no objection to the court taking judicial notice of the convictions from 2014 that were based on the 2012 offense.

During closing argument, while discussing appellant's intent to defraud in the present case, the prosecutor referred briefly to the prior offense evidence and told the jury that "the reason you got to hear about that prior incident is to prove the element of intent."

11

During his closing argument, defense counsel contrasted the strong evidence of intent to defraud in the 2012 incident with the current case, stating that "in 2012, Gina was an identity thief" and that "this is a prosecution against the old Gina. That is what this is. [¶] Because the evidence in this case, the evidence before us in this wallet, does not support a conviction." Counsel told the jury that appellant had "told us the truth" and "owned the past" in her testimony. Counsel concluded by asking the jury, when considering appellant's intent, to think about the differences between this case and the 2012 offense: "Think about that level of sophistication in 2012 that's not present here. [¶] Think about the actual fraud, the actual victims, what [appellant] herself said was her intent, and what she actually did in 2012. [¶] In my opening statement I said I would get back up here and ask you to not convict the old Gina. To vindicate the new Gina."

## B. *Legal Analysis*

We review the court's rulings on the admissibility of evidence under Evidence Code sections 1101, subdivision (b) and 352 for an abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1130 (*Mungia*).)[3]

### 1. *Evidence Code Section 1101, Subdivision (b)*

"Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that

---

[3] We do not agree with respondent that appellant waived this claim and abandoned her objections when she requested permission from the court to present the full circumstances of the 2012 incident to the jury and then used that evidence to differentiate the earlier case from the present one. This defense, and the decision to present additional evidence from the prior incident, presumably was a result of the court's initial ruling that some of the evidence from 2012 was admissible to prove appellant's intent in the present case, and was an attempt to make the best of that evidence.

12

person on a specified occasion. Subdivision (b) of [Evidence Code] section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Hence, under subdivision (b) of Evidence Code section 1101, evidence that a person committed a prior uncharged offense is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) The least degree of similarity between the prior conduct and the charged offense is required to prove intent. (*Ewoldt*, at p. 402; see also *People v. Stitely* (2005) 35 Cal.4th 514, 532 [to prove intent, "[t]he two acts need only be sufficiently similar to suggest that the defendant probably had the same intent each time"].)

In this case, appellant argues that the circumstances of the 2012 offense and this case were too different to warrant admission of the prior offense evidence to prove appellant's intent in the present case. According to appellant, "the only similarity between the two cases was the identity theft label." We disagree.

The limited evidence from the 2012 incident that the court ruled admissible at trial included evidence that during a search of a truck associated with appellant, police found various documents associated with other people, some of which were in a wallet belonging to appellant. In the present case too, during a search of appellant's car, police found a wallet in her possession that contained numerous documents, including checks, credit cards, debit cards, and an out of state driver's license, all of which were associated with other people, as well as the check endorsed by appellant and

13

a receipt with her name on it.  That the items found in the truck and the car were not identical does not negate the fact that evidence from the two incidents had important similarities and that the 2012 offense evidence was quite relevant to prove appellant's intent in the present case.  (See *Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

Moreover, the fact that in the 2012 incident, police also found multiple counterfeit driver's licenses with appellant's photograph on them, checkbooks, cell phones, garage door openers, and tax documents does not render the 2012 offense evidence too dissimilar to be admissible to prove intent, as appellant asserts.  Indeed, it was defense counsel, not the prosecutor, who subsequently asked the court to expand its ruling and admit evidence regarding many of these items, including the cell phones, garage door openers, and tax documents.

Accordingly, given that the least degree of similarity between the prior conduct and the charged offense is required to prove intent and that "[t]he two acts need only be sufficiently similar to suggest that the defendant probably had the same intent each time," we conclude the court did not abuse its discretion when it found some of the evidence from the 2012 incident was admissible in the present case, pursuant to Evidence Code section 1101, subdivision (b).  (*People v. Stitely*, *supra*, 35 Cal.4th at p. 532; see *Ewoldt*, *supra*, 7 Cal.4th at p. 402; see also *Mungia*, *supra*, 44 Cal.4th at p. 1130.)

### 2.  *Evidence Code Section 352*

Before admitting the evidence in question under Evidence Code section 1101, subdivision (b), the trial court was required to determine, pursuant to section 352, whether the probative value of the evidence of appellant's prior conduct was "substantially outweighed by the probability that its admission [would] necessitate undue consumption of time, or create a substantial

14

danger of undue prejudice, confusion of the issues, or misleading the jury." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) Evidence is more prejudicial than probative only when " 'it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.]" (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.)

Appellant first argues that the prior offense evidence had no probative value due to the lack of similarity between the two incidents, a claim we have already rejected. (See pt. II.B.1., *ante*.) She also argues that the prior offense evidence "caused an undue consumption of time because the conviction involved lengthy facts and a sophisticated scheme." According to appellant, this undue consumption of time "heightened [the evidence's] importance to the jury and resulted in prejudice to appellant," particularly given the "inflammatory and sensational" nature of that evidence.

The court acknowledged the prejudice that would inevitably result from admitting evidence of appellant's prior offenses, but it specifically limited that evidence to the most recent of her many prior offenses involving identity theft—the 2012 offense—which it found was extremely probative of appellant's intent in the present case. The court also limited the evidence of items found in the truck in the 2012 incident to those that would be most relevant in assisting the jury to determine appellant's intent in the present case. As the court explained: "I think the fact that she was in possession of ten different IDs, all with her picture on it, checkbooks, and debit cards or credit cards . . . with other people's either information, names, et cetera, is extremely probative. And given that we are talking about potentially fraudulent financial instruments in the present case, I think that it outweighs the prejudicial value, so I will allow those."

15

At trial, the prosecution evidence related to the 2012 offense was limited to presenting the direct testimony of Officer Miovas, which took up approximately 10 pages of the reporter's transcript. The additional time spent on the 2012 incident at trial involved defense counsel's cross-examination of Miovas and appellant's testimony expanding on the evidence the court originally found admissible, and discussing how the difference in scale between the items found in the two incidents demonstrated differing intents. The prior offense evidence presented in the prosecution's case thus was straightforward and limited to a single witness. Moreover, as already discussed, the court reasonably found that the differences between the items found in the truck and the car did not unduly prejudice appellant, considering the relevance and probative value of the 2012 evidence in proving appellant's intent in the present case. (See Evid. Code, § 352; *People v. Jennings*, *supra*, 81 Cal.App.4th at p. 1314.)[4]

The court did not abuse its discretion in admitting the 2012 prior offense evidence to prove appellant's intent in the present case. (See *Mungia*, *supra*, 44 Cal.4th at p. 1130; Evid. Code, §§ 352, 1101, subd. (b).)

## III. *Court's Failure to Exclude the Prior Offense Evidence on the Ground of Delayed Disclosure or to Instruct the Jury Regarding the Delayed Disclosure*

Appellant contends the court erred when it (1) failed to exclude the prior offense evidence pursuant to the reciprocal discovery statutes (§ 1054 et seq.) on the ground that the prosecution delayed disclosure of a police

---

[4] We also observe that the court instructed the jury on the limited purpose for which it could consider the prior offense evidence, i.e., to determine appellant's intent in this case. (See CALCRIM No. 375; see also *People v. Rogers* (2013) 57 Cal.4th 296, 332 [limiting instructions ensured that jury would not consider other crimes evidence, admitted under Evidence Code section 1101, subdivision (b), for any improper purpose].)

report containing information about appellant's many prior convictions, and (2) refused to instruct the jury regarding the delayed disclosure, pursuant to CALCRIM No. 306.

## A. *Trial Court Background*

In appellant's in limine motion to exclude all prior offense evidence at trial, defense counsel included as a ground for exclusion that the evidence "was discovered late to the defense." Counsel argued that admission of the prior offense evidence, which had been in the prosecution' possession since April 2018, but not discovered to the defense until February 5, 2019, would prejudice her because of the limited time before trial she would have to prepare a defense to that evidence.

At the February 21, 2019 hearing on in limine motions, defense counsel reiterated that there was important prior offense evidence that had been in the possession of the Contra Costa County District Attorney's Office, though not the prosecutor personally, for about 10 months before it was turned over to the defense on February 5. Counsel acknowledged that since the trial date had recently been continued, he had 10 days or two weeks "to go through it, so I'm not in the position I initially was in, but it has hamstrung us a bit." The court suggested discussing counsel's request "in more detail when we get to that motion." Later in the hearing, after ruling that evidence of the 2012 offense was admissible under Evidence Code sections 1101, subdivision (b) and 352, the court asked defense counsel: "Does that cover everything we have talked about?" Counsel brought up an evidentiary issue concerning other items found in appellant's car in the present case, but did not again mention the late discovery issue.

On February 25, 2019, after both sides had rested, the parties and the court discussed jury instructions. Defense counsel asked the court to instruct

17

the jury with CALCRIM No. 306, regarding untimely disclosure of evidence, based on the defense's late receipt of the police report containing prior offense information. The prosecutor stated that he did not believe an instruction was necessary because there had been no prejudice from the late disclosure, which consisted of only one police report, and "additional time waivers that were entered into." Defense counsel responded that he had received a total of 250 pages regarding convictions going back to 2001, which he had to scramble to read quickly. In addition, he had not been able to locate Catherine G., who had been a victim of identity theft in the 2012 incident, and he could not have subpoenaed her in time to testify at trial. Upon questioning by the court, counsel acknowledged that he had only asked appellant if she knew where Catherine G. was and had not asked an investigator to try to locate her based on the information he had.

The court declined defense counsel's request to instruct the jury with CALCRIM No. 306, explaining: "So I think this information clearly should have been turned over long ago. It's been there all this time. . . . I'm not excusing the fact that it wasn't turned over, but I'm having some trouble finding the prejudice in that if there had been some efforts to, at least some rudimentary efforts, made to find [Catherine G.], and you can show me some due diligence, the investigator tried to run her down with what information you had and came up short, since that wasn't done, that sort of basically step [*sic*], that tells me that this wasn't of utmost importance to the case, it falls in that category, it would have been nice, but really doesn't go to any of the central issues of the case, I'm really not seeing that this instruction is appropriate." The court subsequently expanded on its reasoning, explaining directly to appellant: "And what I have heard is that, although you didn't have information where this woman was located, no other efforts were

18

necessarily taken to find this person. And I'll be honest with you, I'm not sure how much, even if you had located [Catherine G.], that would have necessarily added to this piece. The prior comes in to show intent, and that's the prior itself. Unless there was information that you can share with me that [Catherine G.] would potentially have that would change that scenario, I don't see how the instruction is necessary at this juncture . . . ."

Defense counsel then returned to his earlier point that the lengthy police report "was a lot to get through and filter through," and "not knowing in advance what was going to be offered by the D.A., I think did put us in a difficult spot in preparing on that." The court responded: "And the other piece of this is, realistically, since your client's criminal history goes back to 1995 and 1996, it would have been quite unlikely that all of that would have come in. It would have been a far stretch for me, or any court, to allow all of that in. So realistically, we were talking about, give or take, somewhere in the ten-year period, and then we could argue about it. But realistically, those reports that went back to '95 were not coming in front of this jury."

## B. *Legal Analysis*

### 1. *The Court's Failure to Exclude the Prior Offense Evidence*

Appellant argues that the court erred when it failed to exclude the prior offense evidence because the delayed disclosure of the police report violated the reciprocal discovery statutes. (See § 1054 et seq.)

"Section 1054.1 provides, in pertinent part, that the 'prosecuting attorney shall disclose' certain types of material to defense counsel if the evidence 'is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies.' Such disclosure 'shall be made at least 30 days prior to the trial' or as soon as the prosecution learns of the documents or information. (§ 1054.7.) To prevail on

19

a claim alleging a violation of the discovery statutes, an appellant must show there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different.  [Citation.]"  (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 467 (*Mora*), citing *People v. Zambrano* (2007) 41 Cal.4th 1082, 1132 [violations of California reciprocal discovery statute is subject on appeal to harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, we will assume for purposes of argument that appellant has preserved this issue for appeal (but see *People v. Braxton* (2004) 34 Cal.4th 798, 813 ["If the trial court's failure to hear or rule on [a] motion appears to be inadvertent, the defendant must make some appropriate effort to obtain the hearing or ruling"]), and that exclusion of the prior offense evidence would in fact have been a proper remedy (but see § 1054.5, subd. (c) [court may prohibit testimony of a witness "only if all other sanctions have been exhausted"]).

Turning to the merits, we conclude that appellant was not prejudiced by the late disclosure.  That is, it simply is not reasonably probable that, had the police report been disclosed in a timely manner, the result of the trial would have been different.  (See *Mora*, *supra*, 5 Cal.5th at p. 467.)

First, in the discussions about the defense's request for the court to give CALCRIM No. 306, to inform the jury about the delayed discovery, defense counsel acknowledged that because of the unrelated delay in the start of trial, he had approximately two weeks to review the police report and use it in his trial preparation.  Counsel did state that his review of this material was rushed because it included 250 pages of documents related to appellant's various convictions, going back many years.  However, as the court noted,

many of those documents pertained to multiple convictions from many years ago, and counsel should have foreseen that the court would not consider admitting prior offenses from more than 10 years earlier.

Second, the only alleged harm to the defense's trial preparation, according to counsel, was the inability to locate Catherine G., whose testimony regarding her losses counsel stated the defense would have presented at trial. However, counsel acknowledged that he had made no effort to find this potential witness in the time available before trial, other than asking appellant if she knew Catherine G.'s whereabouts. The court reasonably found the argument about the importance of Catherine G.'s testimony less than compelling, given the lack of any real attempt to locate her.

Third, the testimony about the 2012 offense was admitted to prove appellant's intent in the present case, and even had counsel located Catherine G., the court had trouble understanding what information Catherine G. would potentially have that would bolster the defense case beyond what was already presented. Although the court invited counsel to share any such information with it, counsel did not respond directly to this question, but instead returned to his having to scramble to review all of the documents before trial. Appellant now argues that "the prior conviction evidence related directly to the material element of intent to defraud" because Catherine G.'s "testimony about her losses would have been valuable to highlight the difference between the two cases." Both the prosecution and defense introduced evidence regarding appellant's wrongful acts in the 2012 offense, which included the various documents found that were in Catherine G.'s name, including driver's licenses, several debit cards, a checkbook, and a letter from Turbo Tax, as well as an envelope with Catherine G.'s name, an

address, and a social security number handwritten on it. Appellant also testified that she had taken mail addressed to Catherine G. from an address in Pleasant Hill.

Appellant, who described her criminal history as "extensive" during her own testimony, also testified more generally about her wrongful conduct and intent in 2012. For example, she testified that when she made the counterfeit driver's licenses with her photo on them, she already had the identifying information for the people she impersonated with the driver's licenses, and that she had possessed the driver's licenses, checks, and credit cards for the purposes of opening fraudulent accounts and making fraudulent transactions, and had in fact opened such accounts and made such transactions.

Considering all of the evidence admitted at trial regarding appellant's conduct in 2012, it is difficult to imagine how additional testimony from Catherine G. about the effects of the identity theft on her would have added significantly to the defense's efforts to contrast "the old Gina" with "the new Gina," as defense counsel put it during his closing argument. Like the trial court, we in no way condone the delayed disclosure of the police report, which was in the possession of the prosecution (although apparently not the prosecutor in this case) for some 10 months before it was produced to the defense. However, in view of all of the circumstances, we find that "[n]o prejudicial statutory violation can be made out" because there is no reasonable probability that the result of the trial would have been different had the evidence in question been timely disclosed. (*Mora*, *supra*, 5 Cal.5th at p. 468.)[5]

_____

[5] In light of this conclusion, we find that appellant's argument that her due process right to a fair trial was violated "because the late evidence

## 2. *Court's Refusal to Instruct the Jury on the Delayed Disclosure*

Appellant contends the court abused its discretion when it refused to instruct the jury with CALCRIM No. 306, regarding the delayed disclosure of the police report.

Under section 1054.1, subdivision (b), upon a showing that a party has not complied with discovery requirements, the trial court "may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).)

CALCRIM No. 306, which the court declined to give in this case, provides in relevant part: "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial.

"An attorney for the (People/defense) failed to disclose: <*describe evidence that was not disclosed*> [within the legal time period].

"In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure." (CALCRIM No. 306.)

Trial courts have broad discretion to determine the appropriateness of a sanction, such as a jury instruction, for discovery abuse. (*People v. Jenkins* (2000) 22 Cal.4th 900, 951.)

In the present case, appellant argues that, had the court instructed the jury with CALCRIM No. 306, "appellant would have been able to highlight the effect of the late disclosure on appellant's case," which "gave respondent a tactical advantage by considerably shortening the time appellant had to investigate the police report."

_____

hampered appellant's ability to adequately investigate the evidence" is without merit.

As we have already set forth in part III.A., *ante*, of this opinion, the court found that the instruction was unnecessary because the defense had not shown either that it considered Catherine G. an important enough witness to make any effort to locate her or that Catherine G.'s testimony would in fact assist appellant in bolstering her credibility and proving that she did not have the intent to defraud in this case. We have already concluded that appellant has failed to demonstrate that she was prejudiced by the delayed disclosure of the police report. (See pt. III.B.1, *ante*.) For the same reasons, we conclude the court's decision not to instruct the jury with CALCRIM No. 306 was well within its broad discretion. (See *People v. Jenkins, supra*, 22 Cal.4th at p. 951.)

## IV. *Prior Prison Term Enhancements*

Appellant contends Senate Bill No. 136 applies retroactively to her case and requires that the six prior prison term enhancement allegations the court found true pursuant to former section 667.5, subdivision (b), be stricken. Respondent agrees.

In the information, the prosecution alleged that appellant had served six prior prison terms, pursuant to section 667.5, subdivision (b). Following the court trial on the prior convictions, the court found all six prior prison term allegations true beyond a reasonable doubt,[6] although it did not impose the one-year enhancement terms because it placed appellant on probation.

Under the version of section 667.5 that was in effect when appellant was sentenced, subdivision (b) required trial courts to impose a one-year enhancement for each prior prison term served for any felony. In 2019, the

---

[6] In making these findings, the court inadvertently referred to the fifth prior prison term allegation as the fourth, and the sixth allegation as the fifth.

24

Legislature passed Senate Bill No. 136, which took effect on January 1, 2020, and which made this enhancement applicable only to a prior prison term served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§ 667.5, subd. (b); Legis. Counsel's Dig., Sen. Bill No. 136 (2019-2020 Reg. Sess) ch. 590; see *People v. Matthews* (2020) 47 Cal.App.5th 857, 862 (*Matthews*).)

"Absent evidence of a contrary legislative intent, when an act of the Legislature lessens or eliminates the prescribed punishment for a criminal offense or a sentencing enhancement, such a penalty reduction must be applied retroactively to all judgments not yet final on appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 745–748; [citations].) '[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed.' [Citation.]" (*Matthews*, *supra*, 47 Cal.App.5th at p. 865.)

Recently, in *Matthews*, a panel of this court addressed whether Senate Bill No. 136 applies retroactively to a one-year enhancement term imposed pursuant to subdivision (b) of section 667.5 before the amendment to that section took effect. We held that "the Legislature's change to section 667.5, subdivision (b) is a reduction in punishment that applies retroactively to non-final judgments." (*Matthews*, *supra*, 47 Cal.App.5th at p. 865.)

Here, the judgment in appellant's case was not final on January 1, 2020, when the amendment to section 667.5 took effect. Moreover, her prior prison terms were for offenses that were not sexual in nature. For these reasons, we agree with both parties that Senate Bill No. 136 applies retroactively to the six prior prison term allegations, which the court found true pursuant to former section 667.5, subdivision (b), but did not impose

25

because it placed appellant on probation.  Those prior prison term enhancement allegations and true findings must therefore be stricken.  (See *Matthews*, *supra*, 47 Cal.App.5th at p. 865.)[7]

## DISPOSITION

The six prior prison term enhancement allegations and the court's true findings are stricken.  In all other respects, the judgment is affirmed.

---

[7] We agree with appellant that striking the enhancement allegations and the court's true findings is necessary, despite the fact that the court did not impose the one-year enhancement terms, to avoid any possible negative consequences to appellant in the future.  (Cf. *People v. Fuentes* (2016) 1 Cal.5th 218, 225 ["even if the *punishment*" for an enhancement allegation is stricken, "an enhancement finding could impact defendant in a future case"].)

_____

Kline, P.J.

We concur:


_____

Richman, J.


_____

Miller, J.


*People v. Bowden* (A157132)

27