Filed 1/28/21  P. v. Reyes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058538 |
| v. | (Super. Ct. No. 17CF0039) |
| DANIEL REYES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Joseph F. Walsh for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Daniel Reyes of domestic battery with corporal injury of L.A. (Pen. Code § 273.5, subd. (a); count 1) and assault with a semiautomatic firearm (Pen. Code § 245, subd. (b); (count 2). The jury also found defendant personally used a firearm (Pen. Code § 12022.5, subd. (a)) during the commission of both offenses. The court imposed a three-year prison sentence on count 2. The court also imposed a three-year sentence on count 1, but stayed the sentence pursuant to Penal Code section 654. The court struck the punishment for the firearm enhancement.

Defendant raises seven contentions on appeal: (1) the court erred in denying his motion to exclude from evidence the gun allegedly used in the assault and battery; (2) the court erred in admitting evidence of an uncharged act of domestic violence under Evidence Code section 1109;[1] (3) the court erred when instructing the jury concerning the section 1109 evidence; (4) defense counsel provided ineffective assistance of counsel by failing to object to some of L.A.'s testimony; (5) the court failed to instruct sua sponte with CALCRIM No. 3477 (presumption the defendant was reasonably afraid of death or great bodily injury while in his home); (6) the court erred in limiting a defense of property instruction as applicable only to count 2; and (7) the court erred in instructing the jury of the unanimity requirement. We reject each contention and affirm the judgment.

FACTS AND PROCEDURAL HISTORY

In 2016, defendant and L.A. were in a "traditional romantic relationship"; L.A. "would stay [at defendant's house] most of the week . . . ." L.A. spent Christmas morning of 2016 with defendant and his children. That night L.A. and defendant went to a nightclub and bar. L.A. consumed four shots and two alcoholic beverages at the bar.

---

[1] All further statutory references are to the Evidence Code unless otherwise stated.

L.A. saw a male acquaintance at the bar who kissed her on the cheek when he greeted her. Defendant accused L.A. of kissing the male acquaintance, called her a "hoe," and left the bar. L.A. remained at the bar and eventually used a rideshare service to get back to defendant's house between midnight and 2:00 a.m.

L.A. was unable to find her key to defendant's house, so she went to the front door, knocked, and rang the doorbell. The door was locked, so she went into the backyard and tried to open the back door, but it also was locked. While in the backyard, she knocked on defendant's bedroom window and called his name, but he did not respond.

She returned to the front of the house and checked to see if the front door was unlocked. Defendant opened the door dressed in his underwear and holding a handgun. Defendant pointed the gun at L.A.'s face and called her a "whore" and "hoe." L.A. stepped into the entryway and crouched down with her face toward the floor. At some point, defendant told L.A. she was bleeding, so she touched the back of her head and saw blood on her hand. Defendant walked away and set the gun down. L.A. ran out the door toward a neighbor's house, calling for help. A female neighbor told L.A. she would call the police. A surveillance video showed L.A. with two neighbors, crying and saying, "He hit me."

Although L.A. never felt or saw defendant hit her, she assumed he hit her with the gun because he was standing close to her.[2] She later learned she had a cut on the back of her head which required five staples to close it.

At trial defendant made an oral motion in limine to exclude from evidence a handgun recovered from his house. The court did not conduct an evidentiary hearing, but heard the following arguments of both counsel.

---

[2] During cross-examination, L.A. admitted she testified at the preliminary hearing that defendant did not hit her in the back of the head. She testified she was lying during the preliminary hearing because she was afraid of defendant.

According to defense counsel, after defendant was arrested, an officer read him his *Miranda* rights and he invoked his right to remain silent.[3] He also did not consent to a search of his house. The officers acquired a search warrant for defendant's house. In the affidavit for the search warrant, the officers stated they were looking for firearms and specifically requested "the ability to bring in a civilian locksmith if necessary to breach" a gun safe.[4] During the search of defendant's house, the officers discovered a gun safe in defendant's bedroom closet. Before bringing in a locksmith, an officer contacted defendant in custody and requested the combination to the safe without readvising defendant of his *Miranda* rights. Defendant provided the combination allowing the officers to search the safe in which they found a gun with what appeared to be a human hair attached to the barrel.

Defense counsel argued, without any evidentiary support, that the officers violated his *Miranda* and Fifth Amendment rights by asking defendant for the combination to the safe after he had previously asserted his right to remain silent, and, therefore, the gun recovered from the safe must be excluded as fruit of the poisonous tree.

The prosecution argued, again without any evidentiary support, that the officer told defendant "we are going to get into the safe, but if you want to give us the combo so we don't destroy it, you can do that"; thus the gun should be admitted into evidence under the inevitable discovery rule.

The court denied defendant's motion. Citing *U.S. v. Patane* (2004) 542 U.S. 630 (*Patane*), the court noted a *Miranda* violation only protects against the admission of coerced statements, not physical evidence. The court also ruled the gun was admissible under the inevitable discovery rule.

---

[3] *Miranda v. Arizona* (1996) 384 U.S. 436.

[4] At trial, L.A. testified she had previously seen defendant's guns in a gun safe he kept locked.

DISCUSSION

*Defendant's Motion to Exclude Evidence*

Defendant contends the court erred in denying his motion in limine to exclude the gun recovered from his gun safe. We disagree.

We begin by stating the familiar rule—a ruling of the trial court is presumed correct. (*People v. Booth* (2018) 25 Cal.App.5th 450, 452 ["The judgment is presumed correct. It is defendant's burden to affirmatively demonstrate error"].) Neither party discussed the standard of review on appeal, we can understand why. A ruling on a motion to suppress evidence depends upon the presentation and weighing of evidence, and here we have no *evidence* suggesting a *Miranda* violation, much less that discovery of the evidence was inevitable. All we have in the appellate record is the argument of counsel. While we could justifiably affirm the ruling denying the motion to suppress based upon the total lack of an evidentiary record, in the interest of justice we will nevertheless discuss the merits of counsels' argument, under the assumption that the facts referenced in their respective trial court arguments are undisputed. But we cannot pass the lack of a record and the evident procedural problems in the trial court without further comment. Proper procedure is important—it assures fairness; here, procedure was ignored.

To begin, there is no evidence in the record that the police officer asked defendant for the combination to the gun safe without a further *Miranda* warning. Counsel proceeded as though this was an acknowledged fact. But we do not have an evidentiary record establishing this foundational fact, or, for that matter, any evidence of what was said during the purported conversation between defendant and the police officer.

Under the inevitable discovery exception to the exclusionary rule, "Evidence need not be suppressed if the prosecution can establish by a preponderance of

5

the evidence that the information would inevitably have been discovered by lawful means." (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1040) "As this is essentially a question of fact, we must uphold the trial court's determination if supported by substantial evidence." (*Ibid.*) Thus, under the appropriate standard of review, we look for evidence supporting the inevitability of discovery. But here, an evidentiary record is completely missing. The record does not even contain evidence that the police officer asked defendant for the combination to the safe. And the prosecution did not have a fair opportunity to present evidence supporting application of the inevitable discovery doctrine. Defendant sprang the oral motion in limine on the prosecution without notice, without evidence, and without briefing. As the trial court observed during the hearing, "As far as a motion to suppress evidence, first of all, you are in complete violation of rule 800. There has been no notice, it hasn't been calendared, litigated, briefed. Both of [you] guys announced ready for trial. We are in the tail end of 402's."

The court's reference to rule 800 was a reference to the local Orange County Superior Court rule governing the procedure for pretrial motions in felony cases. (Super. Ct. Orange County, Local Rules, rule 800 (Rule 800).) Rule 800 applies by its terms to a "[m]otion under Penal Code section 1538.5 and other motions to suppress evidence or for return of property unlawfully seized." (Rule 800(A)(3).) It expands on the basic procedural requirements for all pretrial motions in criminal cases under California Rules of Court, rule 4.111. Among those requirements is that the motion be "accompanied by a memorandum, . . . served and filed at least 10 court days . . . before the time appointed for hearing." (Cal. Rules of Court, rule 4.111(a); accord Rule 800 (B)(1) ["all motions, together with points and authorities, must be in writing and must be served and filed . . . in accordance with Rule 4.111 of the *California Rules of Court*"].) Importantly, California Rules of Court, rule 4.111(b) provides that "[t]he court may consider the failure without good cause of the moving party to serve and file a memorandum within the time permitted as an admission that the motion is without

6

merit." (*Ibid*.; accord, rule 800 (G)(1) ["If any motion subject to this rule is not made within the time limits and pursuant to the requirements of this rule, the failure to do so shall constitute a waiver of the right to make the motion, but the court for good cause shown, may grant relief from the waiver"].)

Penal Code section 1538.5 likewise limits the circumstances under which a motion to suppress may be heard at trial, instead of as a properly briefed pretrial motion.[5] "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial." (Pen. Code, § 1538.5, subd. (h).) Here, there is no suggestion or argument that defendant did not know of the alleged *Miranda* violation in time to make the motion to suppress well before trial.

Despite these procedural defects, which alone would have justified the denial of defendant's motion, the court nevertheless heard the arguments of counsel, unsupported by any evidentiary showing by either party. (See Rule 800(E)(4) ["If the pleadings (moving, responding and reply papers) raise no disputed issues of fact, the court will determine said motion on the pleadings and the argument of counsel"].) Here, we have no pleadings. But the parties have not argued, neither on appeal nor at the trial court, that there are any disputed issues of fact.

---

[5] Penal Code section 1538.5 provides: "A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds:" "The search or seizure with a warrant was unreasonable because any of the following apply:" "the method of execution of the warrant violated federal or state constitutional standards" or "[t]here was any other violation of federal or state constitutional standards." (*Id.*, subds. (a)(1)(B)(iv), (v).) Here, defendant alleged a violation of his Fifth Amendment rights during the execution of the warrant by obtaining the combination to the safe without giving a *Miranda* warning. Section 1538.5, subdivision (a)(2) likewise provides that the motion "shall be made in writing and accompanied by a memorandum of points and authorities and proof of service."

Treating counsel's arguments as if they were undisputed facts, we note the police had a lawful warrant to search defendant's house which specifically allowed them to search for a safe. In executing the warrant the officers were specifically looking for firearms. In the warrant affidavit, the officers asked to be allowed to "bring in a civilian locksmith if necessary to breach" a gun safe. This fact alone supports the court's determination the gun would have been lawfully discovered regardless of defendant providing the combination. In executing a search warrant "[t]he officer may break open any outer or inner door or window of a house, or any part of a house *or anything therein . . . .*" (Pen. Code § 1531, italics added.) "A search of the residence authorizes the search of all areas of the residence, including containers therein, which could hold the contraband described in the warrant." (*People v. Kibblewhite* (1986) 178 Cal.App.3d 783, 785.) The fact that the warrant affidavit specifically asked to "bring in a civilian locksmith, if necessary" demonstrates the officers were going to open that safe, with or without defendant providing the combination, and thus discovery of the gun was inevitable. Moreover, the officers' determination to open the gun safe, with or without the combination, was made clear when the officer told defendant "we are going to get into the safe, but if you want to give us the combo so we don't destroy it, you can do that."

Citing *People v. Superior Court* (*Corbett*) (2017) 8 Cal.App.5th 670, defendant argues the "inevitable discovery rule does not apply to the search of a person's home." However, *Corbett* does not stand for such an absurdly broad proposition. In *Corbett*, law enforcement conducted a warrantless search of the defendant's home based on information obtained from the defendant in violation of his Fourth and Fifth Amendment rights. There, "the People did not present evidence that law enforcement was engaged in any lines of investigation that would ultimately have led them to the illegal firearms in [the defendant's] home without the information gleaned through the 'overreaching by the police'" (*Corbett*, at p. 684.) The court did not broadly rule that the

8

doctrine cannot apply to the search of any home.  Here, the police obviously knew about the gun safe and exhibited their intent to open it before obtaining the combination.

Thus, we conclude the court did not abuse its discretion in ruling the gun would inevitably have been discovered. The police were looking for a gun, a valid warrant was obtained, and the police had demonstrated their intent to open a gun safe with or without a combination provided by defendant.  That defendant provided the combination in an uncoerced manner simply served to "save the safe" from damage or destruction.[6]

*Section 1109*

The prosecutor moved in limine to admit evidence of a prior uncharged act of domestic violence against L.A. pursuant to section 1109.  Defendant argued the incident should be excluded pursuant to section 352.  The court granted the prosecutor's motion over defendant's objection.  On appeal, defendant argues the court erred by allowing the evidence.

---

[6]     The parties extensively brief the question whether physical evidence recovered as a result of a *Miranda* violation can be excluded as "fruit of the poisonous tree."  Defendant relies primarily on *People v. Schader* (1969) 71 Cal.2d 761.  In *Schader*, the California Supreme Court held the "exclusionary rule is applied to the fruits as well as the words of an illegally obtained confession."  (*Id*. at p. 778.)  The Attorney General relies on *Patane*, *supra*, 542 U.S. 630 and *People v. Davis* (2009) 46 Cal.4th 539.  In *Patane*, the United States Supreme Court held in a plurality opinion that "the *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause," and "is not implicated by the admission into evidence of the physical fruit of a voluntary statement."  (*Patane*, *supra*, 542 U.S. at p. 636.)  In *Davis*, the California Supreme Court held that "[t]he fruit of the poisonous tree doctrine does not apply to physical evidence seized as a result of a noncoercive *Miranda* violation."  (*Davis*, *supra*, 46 Cal.4th at p. 598.)  Because we determine the gun inevitably would have been discovered through lawful means regardless of any *Miranda* violation, we need not address whether the evidence could be excluded because of a *Miranda* violation.

L.A. testified that in July 2016 she was at defendant's house. While sitting on the bed, defendant pushed her onto the floor, took her cell phone, and threw it against the wall.

Section 1109, subdivision (a)(1), provides: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible . . . if the evidence is not inadmissible pursuant to Section 352."

In turn, section 352 affords the court the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In this context, the word "prejudice" is used in the sense of "'an emotional bias'" (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1315-1316) or "'"of 'prejudging' a person or cause on the basis of extraneous factors"'" (*People v. Harris* (1998) 60 Cal.App.4th 727, 737), and is not synonymous with "'"damaging"'" (*People v. Karis* (1988) 46 Cal.3d 612, 638). In deciding whether propensity evidence is admissible under section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission . . . ." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

Here, the court did not abuse its discretion. The uncharged incident happened six months before the charged incident, so it was not remote in time. The prior conduct involved only a push without substantial injury, so it was unlikely to have an undue prejudicial impact on the jury. Further, defendant's conduct in the prior incident was distinct from the current offense, so it was unlikely to confuse or mislead the jurors

10

as to what conduct they were considering for the current offense. Finally, the evidence of the prior incident was brief and thus did not lead to an undue consumption of time.

Accordingly, the court did not abuse its discretion by allowing evidence of the prior uncharged incident.

*Ineffective Assistance of Counsel*

During her testimony, L.A. initially said she *assumed* defendant hit her on the back of the head with a gun. She later testified, however, that she was afraid of defendant because he hit her with the gun. Defendant argues on appeal that L.A. lacked personal knowledge to be able to testify that defendant hit her with the gun and his counsel was ineffective for not objecting. Assuming for the sake of argument that L.A. lacked personal knowledge, we disagree defendant's counsel was ineffective for failing to object.

To establish ineffective assistance of counsel, a defendant must prove his counsel's performance was deficient, and that his defense was prejudiced because of this deficiency. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid*.) Moreover, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. (*Strickland*, at

11

p. 697; accord *People v. Mestas* (2013) 217 Cal.App.4th 1509, 1518 ["If there is no showing of prejudice, we need not examine counsel's performance"].)

Here, during cross-examination, defense counsel established L.A. was looking at the ground and thus could not have seen defendant hit her with the gun in the back of the head.

"A  It happened so fast.  I wasn't watching him.  I had my face facing the floor, so obviously I didn't see exactly what was going on.

"Q   So we are clear then, you don't ever remember seeing him hit you with a gun?

"A  No, I didn't see him.

"Q  But you have assumed that he did?

"A  Right, because he was right in front of me, yes."

The prosecutor likewise established, during his redirect examination of L.A., that her crouched position would not have allowed her physically to see defendant hit her with the gun.

"Q  My question was, with you looking down and seeing his feet would it have been possible for you to see him hit you with the gun?

"A  No, unless I was looking up, and I wasn't.

"Q  And you weren't.

"A  I wasn't."

And in closing argument, the prosecutor argued that L.A.'s inability to see the gun strike her actually bolstered her credibility as a witness.

"To her credit she never said, I looked up and saw him hit me.  She said he was standing over me and I looked down.

"If the defense tries to insinuate that she is in some way trying [to] fabricate the evidence or slam the defendant in some way, how easy would it have been for her to say, well, I looked up and saw him hit me with it.  She never ever said that."

12

The prosecutor emphasized the point by later repeating it.

"It would have been so easy to just say I saw that happen. But she maintained I was looking down. I couldn't have seen it. I saw his feet directly in front of me. And then I'm bleeding."

With the defendant's cross examination and the prosecutor's acknowledgment that it would have been physically impossible for L.A. to have seen defendant strike her, there could have been no doubt in the jury's mind that L.A. did not physically see the gun strike her. Her testimony, that defendant hit her with the gun, was clearly a shorthand description of her perception of the event, based on the circumstantial evidence she had observed: defendant's anger with her that evening; defendant holding a gun and pointing it at her; standing over her while she crouched in the entryway; and suddenly bleeding from her head. Her perception of what happened to her was a classic lay opinion, admissible under section 800, as rationally based on her perception and helpful to a clear understanding of her testimony. An objection would not only have been futile, but it also would have appeared silly. Counsel was wise not to appear silly. Counsel was not ineffective, and even if he were, there could have been no prejudice. The jury could not have understood under these circumstance that L.A. saw the gun descending to the back of her head.

*Instructional Error*

Defendant makes three claims of instructional error arguing: (1) the court erred by instructing the jury they could use the section 1109 evidence as to both the assault with a firearm offense (count 2) and the domestic violence offense (count 1); (2) the court erred by instructing the jury that the defense of property instruction, CALCRIM No. 3476, applied only to count 2, and not to count 1, and by failing to instruct sua sponte with CALCRIM No. 3477 (presumption that resident was reasonably afraid of death or great bodily injury from intruder); and (3) the court improperly instructed with an edited

13

version of the unanimity instruction, CALCRIM No. 3500. We address each claim of instructional error in turn and disagree with each.

"In considering a claim of instructional error [reviewing courts] must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.) We apply the de novo standard of review in determining whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

1. The section 1109 evidence (uncharged act of domestic violence) could properly be considered for both counts.

The court instructed the jury it could use the section 1109 evidence to "conclude that the defendant was likely to commit the offenses alleged in counts 1 and/or 2." Defendant argues the court erred by allowing the jury to consider evidence of an uncharged act of domestic violence in relation to count 2. He asserts the offense of assault with a firearm is not an offense involving domestic violence. We disagree. As discussed above, section 1109 allows evidence of an uncharged act of domestic violence to be used as propensity evidence for an offense "involving domestic violence." So the issue is simply whether the assault with a firearm offense "involves" domestic violence.

Section 1109 defines "'domestic violence'" as having "the meaning set forth in Section 13700 of the Penal Code." (*Id.*, subd. (d)(3).) In turn, Penal Code section 13700 defines "'domestic violence'" as "abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a . . . dating or engagement relationship." (*Id.*, subd. (b).) It is undisputed defendant was in a dating relationship with L.A. when the charged offense was committed.

But defendant argues an offense can only qualify under section 1109 if the "victim's and the defendant's domestic relationship [is] an element of the crime."

14

Defendant provides no authority to support this assertion. Courts have routinely found that assaults under Penal Code section 245 qualify as crimes of domestic violence when the defendant's and victim's relationship qualified under Penal Code section 13700. (See e.g. *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1308; *People v. Truong* (2001) 90 Cal.App.4th 887, 899-900.) The plain language of section 1109 does not require the relationship to be an element of the charged offense. We reiterate. Under section 1109 the prior act evidence is admissible when "the defendant is accused of an offense *involving* domestic violence," it does *not* say the evidence is admissible when the defendant is accused of the crime of domestic violence. (*Id*., subd. (a)(1).) "When the statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citation.] The plain language of the statute establishes what was intended by the Legislature." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 937.) We decline to read the posited requirement into the statute.

Defendant also argues his due process rights were violated because the charge of assault with a firearm "does not give notice that it is a domestic violence offense." However, defendant was also charged with an enhancement under Penal Code section 12022.7, subdivision (e), alleging that when he committed the assault with a firearm he "personally inflicted great bodily injury on [L.A.] under circumstances involving domestic violence as described in Penal Code section 13700(b)." Thus, there was no conceivable issue of lack of notice.

> 2. The court was not obligated to instruct with CALCRIM No. 3476 as to count 1 nor to instruct sua sponte with CALCRIM No. 3477.

Defense counsel requested the court to instruct the jury with CALCRIM No. 3476 as to count 2. The court granted the request and instructed the jury, in part, "[t]he owner or possessor of real or personal property may use reasonable force to protect

15

property from imminent harm." The instruction stated the defense was applicable to count 2.

During the discussion regarding CALCRIM No. 3476, the court asked defendant's counsel if CALCRIM No. 3477 should be given as well. [7] Counsel declined, saying he was *not* requesting CALCRIM No. 3477 because, "I discussed that with [defendant] and we read the applicable trial testimony. My position and [defendant's] position is [CALCRIM No. 3477] is not applicable to the facts in our case primarily because it doesn't involve an intruder entering the home at the time of the confrontation between [defendant] and [L.A.]"

Now, on appeal, defendant argues the court erred by (a) instructing the jury that CALCRIM No. 3476 (right to defend real or personal property) applied only to count 2 and (b) failing to instruct sua sponte with CALCRIM No. 3477 (presumption that resident was reasonably afraid of death or great bodily injury from an intruder).

### a. CALCRIM No. 3476

"It is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation]—evidence sufficient for a reasonable jury to find in favor of the defendant [citation]—unless the defense is inconsistent with the defendant's theory of the case [citation]." (*People v. Salas* (2006) 37 Cal.4th 967, 983.)

---

[7] CALCRIM No. 3477 states, in relevant part: "The law presumes that the defendant reasonably feared imminent death or great bodily injury to (himself/herself) . . . if: [¶] 1. An intruder unlawfully or forcibly (entered /[or] was entering) the defendant's home; [¶] 2. The defendant knew [or reasonably believed] that an intruder unlawfully and forcibly entered/ [or] was entering) the defendant's home; [¶] 3. The intruder was not a member of the defendant's household or family; [¶] AND [¶] 4. The defendant used force intended to or likely to cause death or great bodily injury to the intruder inside the home."

16

Substantial evidence did not support extending CALCRIM No. 3476 to count 1. There was *no* evidence to suggest L.A. was a threat to defendant's property once he opened the door and recognized it was her. Defendant argued he opened the door and pointed the gun at L.A. because he feared she was breaking into his house. And the court correctly instructed on that theory with CALCRIM No. 3476 as applied to count 2. But count 1, the domestic violence with corporal injury, was based on defendant striking L.A. with the gun *after* he knew it was her and began speaking to her. There was *no* evidence presented to support a theory defendant was afraid L.A. was a threat to his property once he opened the door and recognized her.

In any event, any error in failing to extend CALCRIM No. 3476 to count 1 was harmless under any standard of review. Defendant was able to argue he was defending his property when he committed the assault with a firearm. Indeed, that was his principal argument to the jury. But the jury rejected the argument. Both counts were based on the same incident, so there is no reason the jury would have accepted the defense as to count 1 while rejecting it as to count 2.

b.   CALCRIM No. 3477

There was a complete lack of evidence which would have supported instructing the jury with CALCRIM No. 3477. L.A. was a member of defendant's household, not an unknown intruder. It was undisputed she had a key to the residence and stayed at his house most nights of the week. Further, there was no evidence L.A. unlawfully or forcibly entered defendant's home nor evidence he believed she was an intruder when she entered his house. Thus, the court was correct to refrain from instructing the jury with CALCRIM No. 3477.

17

3.  The unanimity instruction was not erroneous.

Defendant argues the court erred by instructing the jury with an edited version of CALCRIM No. 3500 which stated:  "The defendant is charged with inflicting injury on someone with whom the defendant currently has, or previously had a dating relationship resulting in traumatic condition in Count 1 and Assault with Semiautomatic Firearm in Count 2.  [¶]  The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

Defendant argues the wording of this version of CALCRIM No. 3500 allowed the jury to convict him of both counts "if the jury found he committed one of the counts" and further allowed the jury to convict him of both counts "if they all agreed that he pointed a loaded firearm at" L.A.  We disagree with both claims.

"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538 disapproved on another point in *People v. Reyes* (1998) 19 Cal.4th 743, 756.)

Here the jury was also instructed with CALCRIM No. 3515 which said, "Each of the counts in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."  Further, the instruction for count 1 instructed the jury they could only find defendant guilty of that count if the prosecution proved "[t]he defendant willfully inflicted a physical injury on" L.A.  We must "'assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.'"  (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.)  Given that context, there was no error with the version of CALCRIM No. 3500 given to the jury.

DISPOSITION

The judgment is affirmed.


                                        IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.