Filed 2/26/21  P. v. Yakou CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRYSTAL WALEED YAKOU,<br><br>    Defendant and Appellant. | D076140<br><br><br><br>(Super. Ct. No. SCS304061) |

APPEAL from a judgment of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed.

Pauline Erika Villanueva, under appointment by the Court of Appeal, for the Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Chrystal Waleed Yakou of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)), and found true allegations that she personally used a deadly weapon (a knife); (§ 1192.7, subd. (c)(23)), and

---

[1]    Undesignated statutory references are to the Penal Code.

personally inflicted great bodily injury on J.V. (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)). The court suspended imposition of sentence and granted Yakou three years of formal probation on various terms and conditions, including that she serve 270 days in local custody.

Yakou contends the court violated her constitutional rights to due process, a fair trial and to present a complete defense by improperly excluding testimony impacting J.V.'s credibility. We affirm.

FACTUAL BACKGROUND

On October 6, 2018, Yakou drove her friend J.V. to a nightclub in Tijuana, Mexico. Yakou parked in a lot in San Ysidro, California, and they walked across the international border. They argued in the nightclub, and J.V., who was drunk, returned to the parking lot separately. About an hour later, Yakou arrived and yelled at J.V. for leaving her at the nightclub, saying she was afraid to cross the border alone.

J.V. testified that Yakou and J.V. both got into the car but before exiting the parking lot, Yakou stopped the car and ordered J.V. out. J.V. refused. J.V. grabbed Yakou's phone, and they struggled over it. Yakou punched J.V.'s head, ribs, chest, and hands. J.V. did not hit her back. While Yakou was calling 911, she took out a knife and aimed it at J.V., who put up his hands to block a stabbing to his body. Yakou sliced two of J.V.'s fingers. The dispatcher heard J.V. saying Yakou had just stabbed him.

Minutes later, J.V. called 911 and reported the stabbing. He admitted he lied by telling the dispatcher that Yakou was his girlfriend, but explained he was hoping to speed up the emergency response he was requesting. Law enforcement responded while J.V. was still on the phone with 911. J.V. appeared to be in shock and pain. Emergency personnel transported J.V. to the hospital, where he underwent surgery to repair his fingers, which were

2

sliced to the bone, resulting in nerve damage. His fingers remained paralyzed at the time of the trial, which was about seven months after the incident.

During cross-examination of J.V., he was asked if he recalled telling Yakou during the incident that he could not go to jail, and he stated he did not recall that.

An investigating officer who arrived on the scene spoke with Yakou regarding the stabbing incident, but she did not complain of pain or request medical attention. The officer testified that Yakou did not appear to be a victim in the altercation, but rather the "dominant aggressor."

*Defense Case*

Yakou testified that she did not want J.V. to drive with her and tried to pull him out. According to her, J.V. kicked her, a scuffle ensued, and he locked the door to keep her outside. After an extended argument with him, she told him she would call the police. At that, "he got very, very angry, very aggressive, furious. He looked at me with a look I have never been given in my life, and he started yelling at me, cursing on me. And he said that he can't go to jail." J.V. grabbed her phone. Yakou said J.V. "viciously attacked her." She then retrieved her switchblade from the center console. J.V. told her three times, "Stab me." He lunged at her, trying to strike her face with his fist, but she "swiped" his hand with the switchblade.

During closing arguments, defense counsel argued: "This case is about [J.V.] being drunk, violent, and belligerent. It is a case of self-defense. Ms. Yakou had no other choice but to defend herself," and relied on jury instructions regarding self-defense. Defense counsel argued, "This is important because [Yakou] was the victim. [J.V.] tells her, I don't want to go to jail, and this is when he reaches for her phone to stop her from getting her

3

phone to call 911." Defense counsel further argued J.V. was trying to stop Yakou from reporting his crimes, which included assault on Yakou, preventing her from reporting a crime to the police, stealing her car, and filing a false police report.

Defense counsel also attacked J.V.'s credibility during closing arguments: "[J.V.] on this witness stand told you all, he told you, 'I lied when I called 911 and I told them that Ms. Yakou was my girlfriend.' Not only did he tell you that he lied deliberately, deliberately and planned to do it, but he told you why. Because in his mind if he told them that this was his girlfriend, they will come faster. You can consider whether the witness, [J.V.], deliberately—yes, he told you he intentionally planned that lie—lied about something significant."

## DISCUSSION

Yakou contends the trial court violated her federal constitutional right to present a complete defense when it excluded evidence that J.V. had suffered a drug arrest and a two-day incarceration a week before the stabbing incident. She claims that evidence served two purposes: first, it provided "a basis for [her] response to [his] aggression and violence on the night of the incident, and second, as a possible motive for him to lie about the events of that night." She concedes that the court "may have been correct in that the first theory of admissibility would have opened the door to [admission of evidence regarding her] past incidents of violence." But as to the second purpose for the challenged evidence, she concludes, "it was the mere fact that [J.V.] had been recently arrested and released from custody that would have been relevant to evaluating [J.V.'s] credibility, as it demonstrated a potential bias and motive to lie." Pointing out that she and J.V. were the only witnesses to the incident, Yakou contends that J.V. arguably was concerned

4

about ending up in custody as a result of the incident and thus had a reason to lie about it.

*Background*

Before trial, the prosecution moved in limine to exclude evidence of J.V.'s criminal history and to redact Yakou's statement on the 911 call that J.V. was a felon who "just got out of jail so he freaked out when [she] told him she was calling the police." The prosecutor argued that evidence was prejudicial under Evidence Code section 352. Under Evidence Code section 1103, subdivision (b), the prosecution also sought to admit evidence of Yakou's two 2016 domestic violence incidents if she attacked J.V.'s character by presenting evidence that he was a violent person.

Yakou moved in limine to exclude testimony regarding one of her 2016 domestic violence incidents.

The court declined to redact the 911 call, finding that the portion where Yakou stated that J.V. was a felon constituted an excited utterance, but ruled the prosecutor could ask J.V. whether he was a felon. As to the motion to exclude J.V.'s recent release from jail, the court stated that admitting it in order to explain self-defense, or Yakou's fear of J.V., would trigger Evidence Code section 1103, permitting the prosecution to admit evidence of Yakou's prior bad acts.

The jail records disclosed that J.V. was arrested on a drug charge and spent two days in custody shortly before the incident. The court denied admission of J.V.'s recent drug arrest under Evidence Code section 352: "First of all, there is not a conviction. There is a drug charge, there is just two days in jail. It is not moral turpitude. I don't know if it is possession or not, but if it is not a sales charge, it is not moral turpitude and even wouldn't be allowed because [ ] it is not a conviction. But in any case, it does just kind

5

of dirty him for no reason.  I think a jury can understand the argument that he didn't want to go to jail.  . . . [I]n a[n Evidence Code, section] 352 analysis, it doesn't add that much, and it is more prejudicial than probative . . . but you can ask the question whether [J.V.] was just trying to keep himself from going to jail.  You just can't do going to jail again[.]"

Defense counsel then argued to the court that J.V.'s recent arrest was admissible as it related to Yakou's state of mind, particularly because she claimed self-defense.  Defense counsel further argued that Yakou believed J.V. was a felon who had just been released, which "definitely played into the reaction that she had to [J.V.'s] actions and the decisions that she made that night."  The court agreed the challenged evidence would be admissible for that purpose but cautioned that evidence of Yakou's prior domestic incidents would then be admissible under Evidence Code section 1103.

*Applicable Law and Standard of Review*

Evidence Code section 352 provides that the trial court has the discretion to exclude otherwise admissible evidence, "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]."  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)  We review a court's ruling under Evidence Code section 352 for an abuse of discretion.  (*People v. Harris* (2005) 37 Cal.4th 310, 337 [admissibility of impeachment evidence of past criminal conduct involving moral turpitude].)

6

The trial court's discretion here is " 'broad' " and authorizes the court to control the presentation of proposed impeachment evidence " 'to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' " (*People v. Smith* (2007) 40 Cal.4th 483*,* 512-513.)  As particularly applicable here, under Evidence Code section 352, "trial courts have broad discretion to exclude impeachment evidence *other than felony convictions* where such evidence might involve undue time, confusion, or prejudice." (*People v. Contreras* (2013) 58 Cal.4th 123, 157, fn. 24, italics added.)

A trial court's exercise of its broad discretion under Evidence Code section 352 will not be overturned on appeal absent a manifest abuse of that discretion.  (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)  " 'It is . . . well settled that the erroneous admission or exclusion of evidence does not require reversal except where the error or errors caused a miscarriage of justice.  [Citation.]  "A 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1018.)

Applying these standards compels us to conclude the trial court did not abuse its discretion by excluding evidence relating to J.V.'s prior arrest and brief time in jail.  "On the prejudice side of the scale, we are concerned only with the possibility of an emotional response to the proposed evidence that would evoke the jury's bias against defendant as an individual unrelated to his guilt or innocence." (*People v. Gunder* (2007) 151 Cal.App.4th 412, 417.)  The trial court reasonably concluded this evidence was unduly prejudicial under Evidence Code section 352, as it would likely evoke the jury's biased

7

reaction toward J.V. The court also could have reasonably concluded that testimony regarding the challenged evidence would have consumed an undue amount of time.

In any event, the issue of whether J.V. had spoken about going to jail was presented the jury, and it was not reasonably probable it would reach a more favorable result to Yakou absent the court's ruling. J.V. testified on cross-examination about whether he recalled saying to Yakou that he could not go to jail. Defense counsel argued to the jury that J.V. affirmatively made that statement to Yakou. Defense counsel also argued that J.V. was not credible because he had lied to the 911 dispatcher, and therefore the jury should evaluate his testimony on other matters in that light. Because the jury had ample evidence to reject J.V.'s credibility and chose to believe him, we cannot say it would have reached a different conclusion had the court admitted evidence of his drug arrest.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.